A. RON VIRMANI, M.D. v. PRESBYTERIAN HEALTH SERVICES CORP.; In Re KNIGHT PUBLISHING COMPANY D/B/A THE CHARLOTTE OBSERVER AND JOHN HECHINGER

No. 62PA97-2

(Filed 25 June 1999)

**1. Parties— motion to intervene—no required findings and conclusions**

The trial court did not err by denying The Charlotte Observer's motion to intervene in an action in which plaintiff challenged the revocation of his medical privileges at defendant-hospital and which involved sealed records and a closed courtroom due to use of peer review records. Contrary to the holding of the Court of Appeals, there is no authority which indicates that a trial court must record specific factual findings and conclusions of law prior to denying a motion to intervene.

**2. Parties— intervention as of right—sealed records and closed courtroom—newspaper—no direct interest in action**

The Charlotte Observer was not entitled to intervene as a matter of right pursuant to N.C.G.S. § 1A-1, Rule 24 in an action in which plaintiff challenged the revocation of his medical privileges at defendant-hospital and which involved sealed records and a closed courtroom due to use of medical peer review records. The Observer has no direct interest in plaintiff's action and its indirect interest may be adequately asserted in a timely manner by other means.

**3. Parties— permissive intervention—sealed records and closed courtroom—newspaper—indirect or contingent interest**

The trial court did not abuse its discretion by denying The Charlotte Observer permissive intervention under N.C.G.S. § 1A-1, Rule 24 in an action in which plaintiff challenged the revocation of his medical privileges at defendant-hospital and which involved sealed records and a closed courtroom due to use of peer review records. The Observer's interest is only indirect or contingent and there was every reason to believe that permitting the Observer to intervene would unduly delay the adjudication of the rights of the original parties. Moreover, the Observer had alternative means of obtaining a full and timely review of the issue it sought to raise.

**4. Public Records— court records—inherent power to ensure fairness and impartiality—retained by courts**

Notwithstanding the broad scope of the public records statute and the specific grant of authority in N.C.G.S. § 7A-109(a), North Carolina trial courts always retain the necessary inherent power granted by Article IV, Section 1 of the North Carolina Constitution to control their proceedings and records in order to ensure that each side has a fair and impartial trial. Thus, even though court records may generally be public records under N.C.G.S. § 132-1, a trial court may, in the proper circumstances, shield portions of court proceedings and records from the public; the power to do so is a necessary power rightfully pertaining to the judiciary as a separate branch of the government and the General Assembly has no power to diminish it in any manner.

**5. Public Records— medical peer review documents—court proceedings—excluded from Act**

The plain language of N.C.G.S. § 131E-95 excludes information and records pertaining to medical review committee proceedings from the public records law and there is nothing in the plain language of the statute to support the contention that it applies only to third party malpractice plaintiffs. Furthermore, the argument that any document or record which a judge considers in determining litigants' rights is part of the public records of the courts was rejected because there must be a way for a court to review documents alleged to be inadmissible without making them public records.

**6. Public Records— medical peer review documents— attached to complaint—public domain**

The trial court erred by sealing medical peer review documents which were attached to a complaint arising from the revocation of hospital medical privileges. While the documents might otherwise have been protected by N.C.G.S. § 131E-95, once they were filed in the public records of the court by the plaintiff as part of his complaint they were thrust into the public domain de facto and became subject to the Public Records Act. However, it was improper for those documents to be attached to the complaint and they continue to be inadmissible as evidence or as a forecast of evidence.

**7. Public Records— medical peer review documents—submitted directly to judge—properly sealed**

The trial court did not err in an action arising from the revocation of medical privileges at a hospital by sealing medical peer review documents which were never filed with the clerk and which were submitted directly to the presiding judge in support of arguments on various pretrial motions. Defendant-hospital took painstaking steps to preserve any confidentiality afforded by law to the records and information submitted to the judge.

**8. Public Records— federal common law—no greater than First Amendment access**

Any possible federal common law right of public access to state court proceedings and records is no greater than the First Amendment right assumed to exist and discussed below.

**9. Public Records— state common law—supplanted by Act**

N.C.G.S. § 131E-95 supplants any North Carolina common law right of public access to information regarding medical review committee proceedings and related materials and The Charlotte Observer in this case has no right under the common law of North Carolina to the information.

**10. Public Records— North Carolina Constitution—open courts—civil proceedings—qualified right of public access**

The open courts provision of Article I, Section 18 of the North Carolina Constitution guarantees a qualified constitutional right on the part of the public to attend civil court proceedings. This qualified public right of access is subject to reasonable lim-

itations imposed in the interest of the fair administration of justice or for other compelling public purposes. Where the trial court closes proceedings or seals records and documents, it must make findings of fact which are specific enough to allow appellate review.

**11. Public Records— medical peer review records—sealed— open courts provision not violated**

The trial courts did not violate the North Carolina constitutional open courts provision in an action arising from the revocation of hospital medical privileges by excluding the public from the court hearings and by sealing peer review records. The public's interest in access to these court proceedings, records, and documents is outweighed by the compelling public interest in protecting the confidentiality of medical records in order to foster effective exchange among medical peer review members, there was no reasonable alternative, and the judges provided a sufficient record for appellate review.

**12. Public Records— medical peer review documents— sealed—no federal constitutional violation**

The trial court did not violate any federal constitutional right to attend court proceedings and view records in an action arising from the revocation of hospital medical privileges by closing hearings and sealing materials and transcripts involving medical peer review records. Assuming that the United States Supreme Court would hold that the qualified First Amendment right to public access applies to civil cases, the compelling public interest in protecting the confidentiality of the medical peer review process outweighs the right of access in this case and there is no alternative which will adequately protect that interest.

On discretionary review pursuant to N.C.G.S. § 7A-31 and on appeal of right of a constitutional question pursuant to N.C.G.S. § 7A-30(1) to review a unanimous decision of the Court of Appeals, 127 N.C. App. 629, 493 S.E.2d 310 (1997), reversing and remanding orders entered in Superior Court, Mecklenburg County, by Gray, J., on 24 January 1996; by Downs, J., on 9 February 1996; by Johnson (Marcus L.), J., on 8 May 1996 and 10 May 1996; by Downs, J., on 15 May 1996; and by Downs, J., on 22 May 1996. Heard in the Supreme Court 29 September 1998.

**VIRMANI v. PRESBYTERIAN HEALTH SERVICES CORP.**

[350 N.C. 449 (1999)]

*Bush, Thurman & Wilson, P.A., by Tom Bush, for plaintiff-appellee.*

*Kilpatrick Stockton, L.L.P., by Noah H. Huffstetler, III, for defendant-appellant.*

*Waggoner, Hamrick, Hasty, Monteith & Kratt, P.L.L.C., by John H. Hasty and G. Bryan Adams, III, for intervenors-appellees Knight Publishing Co. and John Hechinger.*

*Smith, Anderson, Blount, Dorsett, Mitchell & Jernigan, by Julian D. Bobbitt, Jr., on behalf of North Carolina Hospital Association and the North Carolina Medical Society, amici curiae.*

*Everett, Gaskins, Hancock & Stevens, L.L.P., by Hugh Stevens and C. Amanda Martin, on behalf of North Carolina Press Association, Inc., and The News and Observer Publishing Co., Inc; and Brooks, Pierce, McLendon, Humphrey & Leonard, L.L.P., by Mark J. Prak, on behalf of North Carolina Association of Broadcasters, Inc., amici curiae.*

MITCHELL, Chief Justice.

This appeal presents an issue of first impression for this Court. We are called upon to decide whether the public and the news media have a right of access to civil court proceedings and records pertaining to medical peer review evaluations and, if so, the extent of this right. Specifically, appellant presents questions for review regarding the Court of Appeals' decision reversing several orders entered in a civil lawsuit in Superior Court, Mecklenburg County, which orders closed courtroom proceedings and sealed various documents.

This suit was brought by Dr. Ron Virmani against Presbyterian Health Services Corporation (Presbyterian) following the suspension of Dr. Virmani's medical staff privileges at The Presbyterian Hospital and Presbyterian Hospital Matthews (jointly, the Hospital), hospitals owned and operated by Presbyterian in Mecklenburg County, North Carolina. For the reasons set forth below, we affirm in part and reverse in part the decision of the Court of Appeals.

The portions of the record open to the public and the facts set forth in the briefs submitted to this Court on which the parties and the putative intervenor agree, indicate that the following events took place in connection with the instant case. After concerns were raised

about Dr. Virmani's competence as a physician, Presbyterian conducted a medical peer review evaluation of all of his cases at the Hospital. The medical review committee, comprised of six of Dr. Virmani's colleagues on the medical staff, reviewed the charts of the patients Dr. Virmani had admitted to the Hospital and treated there. Based on the peer review committee's evaluation, Presbyterian concluded that Dr. Virmani's medical judgment posed a serious risk to the health and safety of its patients and, therefore, suspended Dr. Virmani's medical privileges at the Hospital.

After exhausting the administrative appeals available within the Hospital, Dr. Virmani filed this lawsuit against Presbyterian on 22 January 1996, challenging the revocation of his privileges. Dr. Virmani attached numerous documents as exhibits to his complaint. These included copies of: a memo from the chairman (Chairman) of the Hospital's Obstetrics/Gynecology (OB/GYN) Department requesting a peer review evaluation of Dr. Virmani; a memo from the Chairman summarizing a meeting in which he notified Dr. Virmani of the peer review; a letter from the Chairman and the chairman of the OB/GYN peer review committee to members of the department, informing them of the peer review process; the peer review committee's detailed report and its summary of findings regarding its evaluation of Dr. Virmani; and a letter from Presbyterian's president suspending Dr. Virmani from the active staff. Dr. Virmani included in his complaint a motion for a temporary restraining order and for a preliminary injunction ordering Presbyterian to comply with the procedures set forth in the Hospital's bylaws and to reinstate Dr. Virmani until it so complied.

On 23 January 1996, Judge Marvin K. Gray conducted a hearing on plaintiff's motion for a temporary restraining order. Presbyterian moved to close the hearing and to seal the exhibits which were attached to the complaint and which contained confidential medical peer review records and materials. On 23 January 1996, Judge Gray signed a temporary restraining order directing the Hospital to readmit Dr. Virmani to the medical staff pending a hearing on his motion for a preliminary injunction. The temporary restraining order also directed that

> based upon the provisions contained in North Carolina General Statute § 131E-95. Medical Review Committee, the hearing on plaintiff's application for a temporary restraining order shall be confidential; that the exhibits attached to plaintiff's complaint

shall be sealed by the clerk of court until further order of this court; and that all other pleadings, affidavits and motions heretofore filed with the court, shall be maintained and available to the public absent a subsequent ruling or order by this court to the contrary.

The exhibits attached to the complaint were sealed and are included in the record on appeal in an envelope marked as "Exhibit 3."

On 7 February 1996, Presbyterian submitted directly to Judge James U. Downs a legal memorandum in opposition to Dr. Virmani's motion for preliminary injunction along with supporting affidavits from various hospital personnel, all of which included medical peer review information. In its cover letter, Presbyterian noted that it had not filed these documents with the court because they were protected under the peer review statute. Presbyterian further stated in the letter, "We are providing, but not filing these documents in order that the Court might be prepared for the hearing while at the same time preserving the privilege and protection provided by statute." Thereafter, Judge Downs issued an order on 9 February 1996 sealing confidential peer review information and records in the "Court File." This order sealed Presbyterian's motion to seal confidential peer review records and materials, the affidavits of hospital personnel and exhibits attached thereto, exhibits to plaintiff's complaint, and the memorandum in opposition to Dr. Virmani's motion for preliminary injunction. In the order, Judge Downs found that: (1) Presbyterian had filed with him "sensitive and confidential information and Peer Review Committee records and materials," (2) "under N.C.G.S. § 131E-95 records and materials produced and considered by a Medical Review Committee shall be confidential and not considered public records," and (3) "Medical Review Committee records and materials could cause harm to Plaintiff and Defendant and the peer review process if left unsealed in the public record during the course of the pending litigation."

A hearing was later held on plaintiff Dr. Virmani's motion for a preliminary injunction. On 7 March 1996, Judge Downs entered an order denying injunctive relief and dissolving that part of the earlier temporary restraining order which had ordered Dr. Virmani reinstated.

On 3 April 1996, *The Charlotte Observer* published a story by reporter John Hechinger about Dr. Virmani, based on certain docu-

ments Mr. Hechinger had obtained from the court file. On 7 May 1996, Mr. Hechinger attended a calendared hearing in the Superior Court, Mecklenburg County, on Presbyterian's motion to dismiss and the parties' cross motions for summary judgment. Early in the hearing, Presbyterian's attorneys moved to close the courtroom pursuant to N.C.G.S. § 131E-95 because confidential medical peer review information would be discussed during the hearing. Judge Marcus L. Johnson ordered that the hearing be closed to the public and that confidential peer review records which Presbyterian anticipated presenting to the court be sealed. In making his oral order, Judge Johnson noted that it appeared that during a substantial part of the hearing the parties would be discussing and presenting materials pertaining to peer review information. Mr. Hechinger objected to the closing of the hearing and asked for a continuance to allow him to obtain counsel to argue against the closure. Judge Johnson noted Mr. Hechinger's objection and request for a continuance but proceeded to close the hearing and denied the continuance. Mr. Hechinger complied with the closure by leaving the courtroom.

The following morning, an attorney for Knight Publishing Company d/b/a *The Charlotte Observer* and Mr. Hechinger (jointly, the *Observer*) appeared before Judge Johnson and presented written motions to intervene and to open the proceedings to the public and the news media. Judge Johnson denied the motions without hearing arguments. On 10 May 1996, Judge Johnson entered a written order sealing confidential peer review information and records and closing courtroom proceedings involving the discussion and disclosure of peer review information during a hearing on the parties' summary judgment motions. In this order, Judge Johnson made findings of fact virtually identical to those set forth in Judge Downs' earlier closure order. The parties and the putative intervenor all agree that Judge Johnson's order referred to the *Observer*'s motions and that it effectively, although not expressly, denied them. The order provided that (1) the documents presented or used by the parties in support of their motions which contained confidential peer review information would be sealed by the clerk of court, and (2) the summary judgment motions hearings and courtroom proceedings involving the medical review committee records, materials and findings would be closed to the public and the media. Subsequent orders were entered sealing videotapes and transcripts of those portions of the previously closed court proceedings in which medical peer review matters were discussed, presented or argued.

The *Observer* filed a notice of appeal and a petition for writ of certiorari with the Court of Appeals. The Court of Appeals allowed the *Observer*'s writ of certiorari as to the orders that (1) sealed confidential information and medical review committee records and materials that were considered by the court and/or were in the court file, (2) closed the court proceedings dealing with confidential medical review committee records and materials, (3) sealed portions of transcripts and videotapes of the court proceedings, and (4) denied the *Observer*'s motions to intervene and to open court proceedings. In its decision issued 18 November 1997, the Court of Appeals reversed all of the Superior Court orders at issue and directed the court to unseal all of the documents and other materials that had been sealed pursuant to those orders. Presbyterian filed timely notice of appeal as of right with this Court pursuant to N.C.G.S. § 7A-30(1), on the theory that the Court of Appeals' decision involved real and substantial questions arising under Article I, Section 18 of the North Carolina Constitution. Presbyterian also petitioned this Court for discretionary review and for a writ of supersedeas of the judgment of the Court of Appeals, which petitions were allowed on 5 March 1998.

[1] We first address defendant-appellant Presbyterian's argument that the Court of Appeals erred in reversing the trial court's order denying the *Observer*'s motion to intervene. On 8 May 1996, the *Observer* moved to intervene pursuant to Rule 24 of the North Carolina Rules of Civil Procedure "for the limited purpose of objecting to the court's closure of these proceedings to the public and news media." In its motions to intervene and to open the proceedings, the *Observer* asserted that because it was in the business of gathering and reporting to the public newsworthy events in the Charlotte area, it had the

> constitutional right to petition the court not to close these proceedings and to question the closure of these proceedings because closure of the proceedings to the public would deny them the protections guaranteed by the First and Fourteenth Amendments of the United States Constitution and Article I, Section 18 of the North Carolina Constitution.

The *Observer* argued in its motions that under these circumstances, it was incumbent upon the trial court to conduct a "plenary hearing" and to make findings of fact and conclusions of law in accordance with guidelines provided by the United States Supreme Court.

In an oral order at the hearing on 8 May 1996, Judge Johnson denied the *Observer*'s motions, for "the same reasons as given by Judge Downs in the existing order in the file." On 10 May 1996, Judge Johnson entered a written order closing the hearings and directing the clerk of court to seal the medical review committee records and information that had been submitted to the court, including those which had been attached to the complaint. In this written order, Judge Johnson included several findings similar to those set forth in Judge Downs' prior order, including that: (1) the parties had filed with the judge "sensitive and confidential information and Medical Review Committee records, materials and findings" in support of their motions; (2) the parties would be discussing the contents of these peer review materials during the motion hearings and proceedings; (3) "under N.C.G.S. § 131E-95 records and materials produced by a Medical Review Committee and findings of a Medical Review Committee shall be confidential and not considered public records" and (4) the peer review materials "could cause harm to Plaintiff and Defendant and the peer review process if left unsealed in the public record or if open to the public or news media during the course of the pending litigation."

The Court of Appeals concluded that the trial court had erred in denying the *Observer*'s motion to intervene without holding a hearing and without making findings of fact and conclusions of law. Based on this reasoning, the Court of Appeals reversed the trial court's order denying the motion to intervene. We disagree with the Court of Appeals. We have found no authority in decisions by this Court or the United States Supreme Court, including the cases cited by the *Observer* and the Court of Appeals, which indicates that a trial court must record specific factual findings and conclusions of law prior to denying a motion to intervene.

[2] Intervention in North Carolina is governed by statute. Rule 24 of the North Carolina Rules of Civil Procedure determines when a third party may intervene as of right or permissively. N.C.G.S. § 1A-1, Rule 24 (1990). A third party may intervene as a matter of right under Rule 24(a):

(1) When a statute confers an unconditional right to intervene; or

(2) When the applicant claims an interest relating to the property or transaction which is subject of the action and he is so situated that the disposition of the action may as a practical

matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

N.C.G.S. § 1A-1, Rule 24(a). This Court has stated that where no other statute confers an unconditional right to intervene, the interest of a third party seeking to intervene as a matter of right under N.C.G.S. § 1A-1, Rule 24(a)

> "must be of such direct and immediate character that he will either gain or lose by the direct operation and effect of the judgment . . . . One whose interest in the matter in litigation is not a direct or substantial interest, but is an *indirect*, inconsequential, *or a contingent* one cannot claim the right to defend."

*Strickland v. Hughes*, 273 N.C. 481, 485, 160 S.E.2d 313, 316 (1968) (quoting *Mullen v. Town of Louisburg*, 225 N.C. 53, 56, 33 S.E.2d 484, 486 (1945)) (emphasis added) (applying former N.C.G.S. § 1-73), *quoted in River Birch Assocs. v. City of Raleigh*, 326 N.C. 100, 128, 388 S.E.2d 538, 554 (1990) (applying Rule 24(a)(2)). The prospective intervenor seeking such intervention as a matter of right under Rule 24(a)(2) must show that (1) it has a direct and immediate interest relating to the property or transaction, (2) denying intervention would result in a practical impairment of the protection of that interest, and (3) there is inadequate representation of that interest by existing parties. *Alford v. Davis*, 131 N.C. App. 214, ——, 505 S.E.2d 917, 920 (1998); *Ellis v. Ellis*, 38 N.C. App. 81, 83, 247 S.E.2d 274, 276 (1978).

In the present case, there is no claim that any statute other than N.C.G.S. § 1A-1, Rule 24(a), confers upon the *Observer* an unconditional right to intervene. Nor does the *Observer* have a direct interest in the outcome of Dr. Virmani's wrongful discharge action against Presbyterian. At most, the *Observer* has an "indirect" or "contingent" interest—an interest common to all persons—in seeing matters relating to all civil actions made public. The only parties with a direct interest in this civil action are plaintiff and defendant. Because we conclude that the *Observer* has no direct interest in Dr. Virmani's action against Presbyterian and that the *Observer*'s indirect interest may be adequately asserted in a timely manner by other means, we hold that the *Observer* was not entitled to intervene as a matter of right pursuant to N.C.G.S. § 1A-1, Rule 24(a).

VIRMANI v. PRESBYTERIAN HEALTH SERVICES CORP.

[350 N.C. 449 (1999)]

**[3]** We further conclude that the trial court did not err in denying the *Observer* permissive intervention. Rule 24 "contains specific requirements which control and limit intervention." *State ex rel. Comm'r. of Ins. v. N.C. Rate Bureau*, 300 N.C. 460, 468, 269 S.E.2d 538, 543 (1980). A private third party may be *permitted* to intervene under Rule 24(b), but only "(1) When a statute confers a conditional right to intervene; or (2) When an applicant's claim or defense and the main action have a question of law or fact in common." N.C.G.S. § 1A-1, Rule 24(b) (1990). Subject to these limitations, permissive intervention by a private party under Rule 24(b) rests within the sound discretion of the trial court and will not be disturbed on appeal unless there was an abuse of discretion. *See Comm'r. of Ins.*, 300 N.C. at 468, 269 S.E.2d at 543; *see also Alford*, 131 N.C. App. at ——, 505 S.E.2d at 921; *State ex rel. Long v. Interstate Cas. Ins. Co.*, 106 N.C. App. 470, 474, 417 S.E.2d 296, 299 (1992). A trial court abuses its discretion under this statute "where its ruling 'is so arbitrary that it could not have been the result of a reasoned decision.'" *Alford*, 131 N.C. App. at ——, 505 S.E.2d at 921 (quoting *Chicora Country Club, Inc. v. Town of Erwin*, 128 N.C. App. 101, 109, 493 S.E.2d 797, 802 (1997), *disc. rev. denied*, 347 N.C. 670, 500 S.E.2d 84 (1998)). Our trial courts should bear in mind, however, that Rule 24(b)(2) expressly requires that in exercising discretion as to whether to allow permissive intervention, "the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties." N.C.G.S. § 1A-1, Rule 24(b).

In the instant case, the *Observer*'s interest is only indirect or contingent. Further, there was every reason for the trial court to believe that permitting the *Observer* to intervene would—as it has—unduly delay the adjudication of the rights of the original parties. Accordingly, we conclude that the trial court's order denying the *Observer*'s motion to intervene was not so arbitrary that it could not have been the result of a reasoned decision.

In its brief before this Court and the Court of Appeals, the *Observer* argued—and the Court of Appeals has agreed—that the trial court erred in "summarily" denying the *Observer*'s motions to intervene *and* its motion to open the proceedings and make certain records public. By posing the question presented in this manner, however, the *Observer* has mixed two different questions—(1) whether the *Observer* was entitled to intervene, and (2) whether the court proceedings and records must be made public. The United States Supreme Court has indicated that trial court proceedings in criminal

cases may not be summarily closed when the trial court is faced with a First Amendment claim to a right of access, "[a]bsent an overriding interest articulated in findings." *Richmond Newspapers, Inc. v. Virginia,* 448 U.S. 555, 581, 65 L. Ed. 2d 973, 992 (1980) (plurality opinion); *see also El Vocero de Puerto Rico (Caribbean International News Corp.) v. Puerto Rico,* 508 U.S. 147, 124 L. Ed. 2d 60 (1993); *Press-Enterprise Co. v. Superior Court,* 478 U.S. 1, 92 L. Ed. 2d 1 (1986) *(Press-Enterprise II)*; *Press-Enterprise Co. v. Superior Court,* 464 U.S. 501, 78 L. Ed. 2d 629 (1984) *(Press-Enterprise I)*. We address at other points in this opinion the issue of whether the trial court's findings were sufficient to support its closure of the proceedings and sealing of the documents in this case. That substantive issue is different, however, from the question of who should be allowed to appear and present the issue in a civil case and how it should be presented.

We do not believe that the decisions of the United States Supreme Court cited by the *Observer* required the trial court to record specific findings of fact and conclusions of law when denying the *Observer's motion to intervene* in this civil case. This issue of whether a putative intervenor should be allowed to intervene is an issue separate and apart from the merits of the substantive issue the putative intervenor seeks to raise if it is allowed to intervene, and we do not find the cited cases to be controlling. The *Observer's* argument would be more compelling if it could not raise the substantive issue of whether court proceedings and records must be made public by any reasonable manner other than intervention as a party. We note, however, that the trial court's denial of the *Observer's* motion to intervene did not necessarily preclude the *Observer* from presenting full briefs and argument and obtaining a timely ruling on the questions of its right of access to the proceedings and documents in this case. Even if prevented from intervening directly as a party in this civil case, the *Observer* was free to attempt to raise such questions without intervening as a party by (1) extraordinary writ practice, (2) a declaratory judgment action, or (3) resort to established remedies in equity; in fact, these represent the legal methods by which questions of public access to courts and their records are most frequently and successfully raised. *See, e.g., El Vocero de Puerto Rico,* 508 U.S. 147, 124 L. Ed. 2d 60 (declaratory judgment action); *Press-Enterprise II,* 478 U.S. 1, 92 L. Ed. 2d 1 (mandamus proceeding); *Press-Enterprise I,* 464 U.S. 501, 78 L. Ed. 2d 629 (petition for writ of mandate); *Richmond Newspapers,* 448 U.S. 555, 65 L. Ed. 2d 973 (petitions for writ of man-

damus and prohibition). Therefore, the *Observer* had alternative means of obtaining a full and timely review of the issue it sought to raise without being allowed to intervene as a party and unduly delay the adjudication of the rights of the original parties.

For the foregoing reasons, we conclude that the trial court did not err in denying the *Observer*'s motion to intervene. Accordingly, we conclude that the Court of Appeals erred in reversing the order of the trial court denying intervention.

Having determined that the trial court did not err by denying the motion of the *Observer* to intervene in this case, it would be appropriate for us to simply reverse the decision of the Court of Appeals without reaching the other issues raised by the *Observer*. However, those issues were addressed and resolved in the decision of the Court of Appeals, are likely to be raised again in some manner with regard to the facts before us in this case, and those issues have been fully briefed and argued before the Court of Appeals and before this Court. Therefore, in the interest of judicial economy, we elect to exercise the rarely used general supervisory power granted *exclusively to this Court* by Article IV, Section 12(1) of the North Carolina Constitution in order to reach and resolve those issues. *See Lea Co. v. N.C. Bd. of Transp.*, 317 N.C. 254, 263, 345 S.E.2d 355, 360 (1986); *State v. Stanley*, 288 N.C. 19, 26, 215 S.E.2d 589, 594 (1975).

Defendant Presbyterian contends that the Court of Appeals erred in reversing the orders of the trial court closing courtroom proceedings and sealing documents and other materials in this civil action. The *Observer* first responds that because it has an absolute right of access to the peer review documents and testimony regarding the peer review process under N.C.G.S. § 132-1 and N.C.G.S. § 7A-109, the result reached by the Court of Appeals was correct.

Access to public records in North Carolina is governed generally by our Public Records Act, codified as Chapter 132 of the North Carolina General Statutes. Chapter 132 provides for liberal access to public records. *News & Observer Publ'g Co. v. Poole*, 330 N.C. 465, 475, 412 S.E.2d 7, 13 (1992). Absent "clear statutory exemption or exception, documents falling within the definition of 'public records' in the Public Records Law must be made available for public inspection." *Id.* at 486, 412 S.E.2d at 19. The term "public records," as used in N.C.G.S. § 132-1, includes all documents and papers made or received by any agency of North Carolina government in the course of conducting its public proceedings. N.C.G.S. § 132-1(a) (1995).

**VIRMANI v. PRESBYTERIAN HEALTH SERVICES CORP.**

[350 N.C. 449 (1999)]

The public's right of access to court records is provided by N.C.G.S. § 7A-109(a), which specifically grants the public the right to inspect court records in criminal and civil proceedings. N.C.G.S. § 7A-109(a) (1995).

[4] Notwithstanding the broad scope of the public records statute and the specific grant of authority in N.C.G.S. § 7A-109(a), our trial courts always retain the necessary inherent power granted them by Article IV, Section 1 of the North Carolina Constitution to control their proceedings and records in order in ensure that each side has a fair and impartial trial. "The paramount duty of the trial judge is to supervise and control the course of the trial so as to prevent injustice." *In re Will of Hester,* 320 N.C. 738, 741, 360 S.E.2d 801, 804 (1987). Thus, even though court records may generally be public records under N.C.G.S. § 132-1, a trial court may, in the proper circumstances, shield portions of court proceedings and records from the public; the power to do so is a necessary power rightfully pertaining to the judiciary as a separate branch of the government, and the General Assembly has "no power" to diminish it in any manner. N.C. Const. art. IV, § 1; *see State v. Britt,* 285 N.C. 256, 271-72, 204 S.E.2d 817, 828 (1974); *Miller v. Greenwood,* 218 N.C. 146, 150, 10 S.E.2d 708, 711 (1940). This necessary and inherent power of the judiciary should only be exercised, however, when its use is required in the interest of the proper and fair administration of justice or where, for reasons of public policy, the openness ordinarily required of our government will be more harmful than beneficial.

[5] In this case, the trial court sealed medical peer review documents and closed the proceedings relating to them. N.C.G.S. § 131E-95 shields medical review committee records and materials from discovery and prevents their use as evidence in certain civil actions. The plain language of this statute excludes information and records pertaining to medical review committee proceedings from the public records law. The statute provides in relevant part:

> (b) The proceedings of a medical review committee, the records and materials it produces and the materials it considers shall be confidential and not considered public records within the meaning of G.S. 132-1, " 'Public records' defined," and shall not be subject to discovery or introduction into evidence in any civil action against a hospital or a provider of professional health services which results from matters which are the subject of evaluation and review by the committee.

N.C.G.S. § 131E-95(b) (1997). The purpose of N.C.G.S. § 131E-95 is to promote candor and frank exchange in peer review proceedings. *Shelton v. Morehead Memorial Hosp.*, 318 N.C. 76, 82, 347 S.E.2d 824, 828 (1986). The statute attempts to accomplish this goal by preventing discovery or introduction into evidence of a medical review committee's proceedings and the records and materials produced or considered by the committee. *Id.* at 82, 347 S.E.2d at 829.

N.C.G.S. § 131E-95 " 'represents a legislative choice between competing public concerns. It embraces the goal of medical staff candor at the cost of impairing plaintiffs' access to evidence.' " *Cameron v. New Hanover Memorial Hosp., Inc.*, 58 N.C. App. 414, 436, 293 S.E. 2d 901, 914, *appeal dismissed and disc. rev. denied*, 307 N.C. 127, 297 S.E.2d 399 (1982) (quoting *Matchett v. Superior Court*, 40 Cal. App. 3d 623, 629, 115 Cal. Rptr. 317, 320-21 (1974)), *quoted in Shelton*, 318 N.C. at 82, 347 S.E.2d at 829. The statute serves the compelling public purpose of promoting the public health by encouraging "candor and objectivity in the internal workings of medical review committees." *Shelton*, 318 N.C. at 83, 347 S.E.2d at 829; *see also Whisenhunt v. Zammit*, 86 N.C. App. 425, 428, 358 S.E.2d 114, 116 (1987); *Cameron*, 58 N.C. App. at 436, 293 S.E.2d at 914. In *Shelton*, this Court also stressed the broad scope of N.C.G.S. § 131E-95:

> Subsection (b) of § 95 protects documents and related information against discovery or introduction into evidence "in *any* civil action against a hospital . . . which results from matters which are the subject of evaluation and review by the committee."

*Shelton*, 318 N.C. at 82, 347 S.E.2d at 829 (quoting N.C.G.S. § 131E-95(b)) (emphasis in original).

Nevertheless, the *Observer* argues that the peer review materials and information at issue are not covered by N.C.G.S. § 131E-95 because the statute applies only to third party malpractice plaintiffs. There is absolutely nothing in the plain language of N.C.G.S. § 131E-95 which supports the *Observer*'s contention. Further, this Court rejected a strikingly similar argument in *Shelton. Id.* at 81-83, 347 S.E.2d at 828-29. We reject this argument as feckless.

The *Observer* further argues that even if the peer review materials at issue in this case are protected by N.C.G.S. § 131E-95, they became public records once Presbyterian tendered them to the presiding judge for his consideration in support of Presbyterian's arguments. The *Observer* argues that any document or record which a

judge considers in determining litigants' rights is part of the public records of the courts, regardless of whether it was actually introduced as evidence or filed with the court. We can find no case in which either this Court or the United States Supreme Court has established such a rule. We note that the *Observer* relies on several cases decided by the United States Court of Appeals for the Fourth Circuit and by appellate courts of other jurisdictions. None of those cases are binding authority for this Court when addressing this question, which is solely a question of state law. *See State v. Jarrette*, 284 N.C. 625, 654-55, 202 S.E.2d 721, 740 (1974), *death sentence vacated*, 428 U.S. 903, 49 L. Ed. 2d 1206 (1976). We reject such reasoning because there simply must be a way for a court to review documents alleged to be inadmissible and not "public records" without making them public by placing them in court records which are open to the public or by otherwise causing them to be thrust into the public domain.

As noted above, North Carolina's public records act grants public access to documents it defines as "public records," absent a specific statutory exemption. N.C.G.S. § 132-1(b). A custodian of such "public records" has no discretion to prevent public inspection and copying of such records. N.C.G.S. § 132-6 (1995). This Court has previously held that even documents which are protected from public disclosure by a statutory exemption from the definition of "public records" contained in N.C.G.S. § 132-1(a) are open to the public if they are placed in the public records in a governmental agency's possession. *News & Observer Publ'g Co. v. Poole*, 330 N.C. at 473-74, 412 S.E.2d at 12-13. In *Poole, The News and Observer* sought disclosure of certain investigative records prepared by special agents of the State Bureau of Investigation (SBI). Those SBI agents were assisting a University of North Carolina commission in its investigation of alleged improprieties relating to North Carolina State University's men's basketball team, which allegations were later found to be without evidentiary basis. The SBI improperly delivered to the commission the records in question and a report summarizing its investigation. *The News and Observer* claimed a right to copies of the documents under N.C.G.S. § 132-6. The commission claimed that the documents were protected by an express statutory exemption from the public records act of records and evidence collected and compiled by the SBI. We held that once the SBI placed the investigative reports in the records of the commission, they became commission records which were subject to the public records statute and must be disclosed to the same extent as other commission materials. *Id.* We explained that:

To extend the statutory exemption to SBI investigative reports which have been placed in the public domain is like unringing a bell—a practical impossibility. When such reports become part of the records of a public agency subject to the Public Records Act, they are protected only to the extent that agency's records are protected.

*Id.* at 474, 412 S.E.2d at 12.

In the instant case, the records to which the *Observer* seeks access fall into one of two categories: (1) those originally filed with the clerk of court as part of the public records of the court, or (2) those tendered only to the presiding judge for consideration on the merits of the parties' various motions. We must resolve the issues concerning each of these categories separately.

[6] Plaintiff, Dr. Virmani, attached some of the records in question as exhibits to his complaint which was filed with the clerk. These documents were made public the moment that Dr. Virmani filed his complaint. While they might otherwise have been protected by N.C.G.S. § 131E-95, once they were filed in the public records of the court by the plaintiff as part of his complaint they were thrust into the public domain *de facto* and became subject to the public records act. *See id.* The public and the news media have the same right to inspect and obtain copies of those records as they do with any other open court records. N.C.G.S. § 132-1(b). Further, the United States Supreme Court has affirmed the right to publish accurately information contained in such court records which are open to the public. *See Cox Broadcasting Corp. v. Cohn*, 420 U.S. 469, 43 L. Ed. 2d 328 (1975).

The Court of Appeals reversed all of the orders of the trial court in question on this appeal and remanded this case to the trial court, "with direction that the trial court unseal all documents previously sealed pursuant to the orders hereby reversed." *Virmani v. Presbyterian Health Servs. Corp.*, 127 N.C. App. 629, 648, 493 S.E.2d 310, 323 (1997). As we have concluded that the documents filed as exhibits attached to plaintiff's complaint entered the public domain and became "public records" once the complaint was filed with the clerk of court, we agree that members of the public, including the *Observer*, were entitled to inspect and obtain copies of *those documents attached to the complaint*. Accordingly, we affirm in part the holding of the Court of Appeals directing that the sealed documents in this case be unsealed, but we affirm that holding only to the extent that it required the unsealing of the envelope marked "Exhibit 3" in

the record on appeal, which contains the documents originally attached to plaintiff's complaint when it was filed with the clerk of court.

The exhibits originally attached to plaintiff's complaint included exhibits which were records and materials produced by the medical review committee and others which were materials considered by the committee. We note that because N.C.G.S. § 131E-95 expressly prohibits the introduction of such documents "into evidence in any civil action," it was improper for Dr. Virmani to attach them to his complaint as evidence or as a forecast of evidence. We emphasize that those documents continue to be inadmissible as evidence or as a forecast of evidence in this case, which is "a civil action against a hospital or a provider of professional health services which results from matters which are the subject of evaluation and review by the [medical peer review] committee." N.C.G.S. § 131E-95. However, as discussed above, once the peer review records attached to the complaint were filed with the court, they entered the public domain and were available, *de facto* and *de jure*, to the public from that source.

[7] We next consider the documents defendant-appellant Presbyterian submitted directly to the presiding judge in support of its arguments on the various pretrial motions. Presbyterian never filed any peer review materials with the clerk of court. Instead, Presbyterian only tendered such documents directly to the trial judge. Throughout the motions proceedings, Presbyterian took painstaking steps to preserve any confidentiality afforded by law to the peer review records and information it submitted to the trial judge. At the outset of each motion hearing and before the parties made any substantive arguments based on the peer review information, Presbyterian asked the presiding judge to seal documents containing confidential medical peer review information and to close the courtroom proceedings relating to this confidential information. In a cover letter to Judge Downs accompanying Presbyterian's legal memorandum in opposition to plaintiff's motion for preliminary injunction, Presbyterian's counsel stated:

We are providing, *but not filing*, these documents in order that the Court might be prepared for the hearing while at the same time preserving the privilege and protection provided by statute. We will need to address issues relating to confidentiality and privilege of the peer review process *prior to the commencement of the hearing*.

(Emphasis added). Because N.C.G.S. § 131E-95 clearly prohibits the introduction of peer review materials into evidence, Presbyterian's technique was the proper practice for tendering purportedly confidential peer review materials protected by the statute to the court for its consideration.

Documents which Presbyterian submitted directly to the trial judge and which are included in the record on appeal as sealed exhibits include several affidavits of Presbyterian and Hospital personnel, a transcript of a hearing before a peer review committee, and a legal brief in support of Presbyterian's motion for summary judgment (hereinafter referred to collectively as "Confidential Materials"). On defendant's motions, the trial court sealed these Confidential Materials. After reviewing the Confidential Materials, we conclude that each of them is or includes records and materials either produced by the medical review committee or considered by the committee; therefore, they are excluded from the definition of "public records" contained in our public records act by N.C.G.S. § 131E-95. *Shelton*, 318 N.C. at 83, 347 S.E.2d at 829. The trial court properly applied N.C.G.S. § 131E-95 when it ordered that these documents be sealed, as they are not "public records" and are not subject to discovery or introduction into evidence. *Id.*; N.C.G.S. § 131E-95(b).

We further note, however, that N.C.G.S. § 131E-95(b) also provides that:

> information, documents, or records otherwise available are not immune from discovery or use in a civil action merely because they were presented during proceedings of the committee. A member of the committee or a person who testifies before the committee may testify in a civil action but cannot be asked about his testimony before the committee or any opinions formed as a result of the committee hearings.

N.C.G.S. § 131E-95(b). We have previously stated:

> These provisions mean that information, in whatever form available, from original sources other than the medical review committee is not immune from discovery or use at trial merely because it was presented during medical review committee proceedings; neither should one who is a member of a medical review committee be prevented from testifying regarding information he learned from sources other than the committee

**VIRMANI v. PRESBYTERIAN HEALTH SERVICES CORP.**

[350 N.C. 449 (1999)]

itself, even though that information might have been shared by the committee.

*Shelton*, 318 N.C. at 83, 347 S.E.2d at 829.

We recognize that our conclusion that these and similar purportedly confidential documents are shielded from public access by N.C.G.S. § 131E-95 deprives the opposing party of the opportunity to review them in order to formulate a substantive argument about whether they are indeed confidential. However, to hold otherwise would nullify the statute, as the efforts of the party asserting the confidentiality of the records would automatically convert them into public records. As a matter of practicality, there is no other way to handle records which are alleged to be confidential or privileged than that employed here by Presbyterian and the trial court.

Rule 5(e)(1) of the North Carolina Rules of Civil Procedure provides that the presiding judge may permit parties to file papers directly with him or her. N.C.G.S. § 1A-1, Rule 5(e)(1) (Supp. 1998). Under this rule, the party asserting confidentiality may submit the documents to the trial judge for the limited purpose of determining *in camera* whether they should be shielded from the public. In the present case, that was the thrust of Presbyterian's efforts and the trial court understood it to be such. The trial court's review of any such purportedly confidential materials will always be *in camera*, but its ruling will be subject to review by our appellate courts. Where the trial court decides, as here, that as a matter of law the documents are not public records and will not be made available to the public by the court, the documents should be sealed and included in the record, thereby providing a record for appellate review.

[8] The *Observer* also argues that in addition to any statutory right of access, the public has a qualified common law right to inspect and copy public records and documents, including judicial records and documents. The *Observer* does not state whether it relies on a state or federal common law right, or both. In support of this argument, the *Observer* simply relies on citations to both state authorities and *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 55 L. Ed. 2d 570 (1978) (5-4 decision). This reliance is misplaced.

The Supreme Court of the United States is uniquely a creature of the United States Constitution and enjoys a breadth of powers and of public confidence unique in the world. It is not, however, a "common law" court in any strict sense of that phrase. In 1938, the

Supreme Court of the United States overruled *Swift v. Tyson*, 41 U.S. 1, 10 L. Ed. 865 (1842), and stated in very careful language that, "[t]here is no federal *general* common law ." *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78, 82 L. Ed. 1188, 1194 (1938) (emphasis added). All post-*Erie* federal common law is specialized to apply to one peculiarly federal concern or another. *Texas Industries, Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630, 641, 68 L. Ed. 2d 500, 509 (1981). Post-*Erie* federal common law has its ultimate justification in the Constitution. *Erie*, 304 U.S. at 79-80, 82 L. Ed. at 1195. Therefore, post-*Erie* federal common law rules, unlike those of the *Swift* era, are binding on the states through the supremacy clause. George J. Romanik, *Federal Common Law Alive and Well Fifty Years After Erie: Boyle v. United Technologies Corp. and the Government Contractor's Defense*, 22 Conn. L. Rev. 239, 249 (1989); *see also Local 174, Teamsters of America v. Lucas Flour Co.*, 369 U.S. 95, 102, 7 L. Ed. 2d 593, 598 (1962). Recently, the Supreme Court has emphasized that in the strictest sense, federal common law rules are not simply an interpretation of a federal statute or administrative rule, but the judicial creation of a special federal rule of decision. *Atherton v. FDIC*, 519 U.S. 213, 218, 136 L. Ed. 2d 656, 664 (1997). The Supreme Court has also noted that whether federal power should be exercised in a given area to displace state law is primarily a decision for Congress and not the Court. *Id.* Therefore, the Court will not fashion rules of federal common law unless there is a significant conflict between some federal policy or interest and the use of state law. *Id.* Since *Erie*, the Supreme Court has recognized that the instances in which federal common law can be applied are few and restricted. *Texas Industries*, 451 U.S. at 640-43, 68 L. Ed. 2d at 509-11.

Against this background, it is difficult to imagine how the Supreme Court could recognize a federal common law right of public access to *state courts* broader than the right of access already required by the First or Sixth Amendment, without engaging in the exercise of general supervisory powers over the state courts. The Supreme Court has always taken the position that it has supervisory power over cases tried in federal courts; but as to cases tried in state courts, it has said that its authority is limited to enforcing the commands of the United States Constitution. *E.g., Mu'Min v. Virginia*, 500 U.S. 415, 422, 114 L. Ed. 2d 493, 503 (1991); *see also Victor v. Nebraska*, 511 U.S. 1, 17, 127 L. Ed. 2d 583, 597 (1994). Although the Supreme Court requires no guidance from this Court, we suggest the possibility that no federal common law right of access to *state courts* should be recognized if the right of access is already protected by the

First or Sixth Amendment; conversely, if the right of access is not guaranteed by the Constitution of the United States, the adoption of a federal common law rule requiring *state courts* to allow public access would amount to an exercise of supervisory power over the state courts in an area not of federal concern.

Further, the Supreme Court did not purport in *Nixon* to *apply* the common law of any state or federal common law. Instead, in an opinion for a very divided Court, Justice Powell sought, in a discussion which was *obiter dictum* in that case, to "distill from the relatively few judicial decisions a comprehensive definition of what is referred to as the common law right of access." *Nixon*, 435 U.S. at 598-99, 55 L. Ed. 2d at 580. Justice Powell eventually abandoned his effort to define a common law rule, saying, "we need not undertake to delineate precisely the contours of the common-law right, as we assume, *arguendo*, that it applies to the tapes at issue here." *Id.* at 599, 55 L. Ed. 2d at 580. Justice Powell did not speculate as to whether any such rule was a state or federal rule but reviewed state cases almost exclusively.

The "tapes at issue" in *Nixon* were tape recordings made and held by the President of the United States. The right of the public to access those tapes presented a peculiarly federal question with regard to which Congress had enacted substantial legislation. The majority actually decided the case "by giving conclusive weight to the Presidential Recordings and Materials Preservation Act, 88 Stat. 1695," which had not been relied upon by the parties or given consideration by the lower federal courts. *Id.* at 616, 55 L. Ed. 2d at 591 (Stevens, J., dissenting). We do not believe that *Nixon* is controlling authority for the proposition that federal or state common law provides the public a right of access to state courts or their records. In any event, we conclude that being constitutionally derived, any possible federal common law right of public access to state court proceedings and records is no greater than the First Amendment right we assume to exist and apply at a later point in this opinion. *See United States v. Kaczynski*, 154 F.3d 930 (9th Cir. 1998).

[9] We next decide whether the *Observer* has a right under the common law of North Carolina to inspect and copy public records and, if so, whether that right includes the records and documents at issue here. When adopted in 1778, before the existence of the United States of America, current N.C.G.S. § 4-1 reaffirmed principles relating to the common law which had first been statutorily recognized for the Colony of North Carolina in 1715. N.C.G.S. § 4-1 provides:

All such parts of the common law as were heretofore in force and use within this State, or so much of the common law as is not destructive of, or repugnant to, or inconsistent with, the freedom and independence of this State and the form of government therein established, and which has not otherwise provided for in whole or in part, not abrogated, repealed, or become obsolete, are hereby declared to be in full force within this State.

N.C.G.S. § 4-1 (1986). This statute appears to have survived without amendment for the 221 years from its enactment to this date. The common law to be applied in North Carolina "is the common law of England to the extent it was in force and use within this State at the time of the Declaration of Independence; is not otherwise contrary to the independence of this State or the form of government established therefore; and is not abrogated, repealed, or obsolete." *Gwathmey v. State*, 342 N.C. 287, 296, 464 S.E.2d 674, 679 (1995). The common law that remains in force by virtue of N.C.G.S. § 4-1 "may be modified or repealed by the General Assembly, except that any parts of the common law which are incorporated in our Constitution may be modified only by proper constitutional amendment." *Id.*

Further, as the common law originally was, and largely continues to be, a body of law discovered and announced in court decisions, this Court, as the court of last resort in North Carolina, may modify the common law of North Carolina to ensure that it has not become obsolete or repugnant to the freedom and independence of this state and our form of government. *Forsyth Memorial Hosp., Inc. v. Chisholm*, 342 N.C. 616, 621, 467 S.E.2d 88, 91 (1996); *Hall v. Post*, 323 N.C. 259, 264, 372 S.E.2d 711, 714 (1988). Perhaps the best example of this Court exercising its rarely used power to modify the common law was set out by Chief Justice Clark:

Upon this common law it was held in North Carolina, by *Pearson, C.J.*, in *S. v. Black*, 60 N.C., [262 (1864)], that it was the "husband's duty to make the wife behave herself" and to thrash her, if necessary to that end, and in *S. v. Rhodes*, 61 N.C., 453 (1868), this Court sustained the charge of the judge below that a man "had the right to whip his wife with a switch no larger than his thumb," and this was cited and approved in *S. v. [Mabrey]*, 64 N.C., [592 (1870)]. But in *S. v. Oliver*, 70 N.C. [60] (in 1874), this Court overruled the numerous decisions to that effect, *Settle, J.*, saying: "The courts have advanced from that barbarism." Thus passed away the vested right of the husband to thrash his wife

"with a whip no larger than his thumb," without any statute to change the law.

As late as 1886, in *S. v. Edens*, 95 N.C., 693, the Court again held upon the same "judge-made" law of former times, that a man could "wantonly and maliciously slander" the good name of his wife with impunity, or "assault and beat her" if he inflicted no permanent injury upon her; but a majority of this Court reversed that holding in 1908 without any statute, in *S. v. Fulton*, 149 N.C., 485, [63 S.E. 145,] since which time no man has had legal authority to slander or assault and beat his wife in North Carolina. And thus passed away another vested right, or rather another wrong.

*Price v. Charlotte Elec. Ry. Co.*, 160 N.C. 450, 455-56, 76 S.E. 502, 504 (1912) (Clark, C.J., concurring in the result). Decisions of this Court not turning on the application of statutes or constitutional principles constitute common law. *Id.* at 455, 76 S.E. at 504; *see also* O.W. Holmes, Jr., THE COMMON LAW, 1, 35 (Boston, Little, Brown, and Co., 1881); 1 James Kent, COMMENTARIES ON AMERICAN LAW 470 (4th ed. 1840). Bearing in mind the foregoing principles of common law construction, we turn to the question at hand.

At least since 1887, this Court has recognized a common law right of the public to inspect public records. *News & Observer Publ'g Co. v. State ex rel. Starling*, 312 N.C. 276, 280, 322 S.E.2d 133, 136 (1984). However, to the extent that our General Assembly has dictated by statute that certain documents will not be available to the public, this common law right has been superseded. We have long held that when the General Assembly, as the policy-making agency of our government, legislates with respect to the subject matter of any common law rule, the statute supplants the common law rule and becomes the law of the State. *Id.* at 281, 322 S.E.2d at 137; *McMichael v. Proctor*, 243 N.C. 479, 483, 91 S.E.2d 231, 234 (1956). As noted above, the General Assembly has enacted a statute which expressly provides that the proceedings of a medical review committee and the records and materials produced and considered by such a committee "shall be confidential and not considered public records ." N.C.G.S. § 131E-95(b). Therefore, N.C.G.S. § 131E-95 supplants any North Carolina common law right of public access to information regarding medical review committee proceedings and related materials. The *Observer* has no right under the common law of North Carolina to the medical peer review information and materials or to the portions of any hearings in this case pertaining to such information and materials.

[10] We must next turn to the constitutional issues presented on appeal. Defendant Presbyterian contends that the Court of Appeals erred in holding that the orders of the trial court closing the hearings in this case and sealing the Confidential Materials violated the North Carolina Constitution. The *Observer* responds that the decision of the Court of Appeals was correct because Article I, Section 18 of the North Carolina Constitution requires that all court proceedings and all records pertaining to court proceedings be open to the public. This open courts provision states that:

> All courts shall be open; every person for an injury done him in his lands, goods, person, or reputation shall have remedy by due course of law; and right and justice shall be administered without favor, denial, or delay.

N.C. Const. art. I, § 18. The Court of Appeals engaged in an extensive analysis of the history of similar provisions in the constitutions of several states in the "OPEN COURTS PROVISION" section of its opinion below. *Virmani*, 127 N.C. App. at 637-41, 493 S.E.2d at 315-18. Based on its analysis, the Court of Appeals concluded that the open courts provision of our state Constitution creates a presumption that civil court proceedings are to be open to the public and that "the occasion for closing presumptively open proceedings and sealing court records should be exceedingly rare." *Id.* at 645, 493 S.E.2d at 320. The Court of Appeals held that

> the open courts provision of our state constitution provides the public, including [the *Observer*], a constitutional right of access to the civil court proceedings at issue here, including the videotapes, tapes, and transcripts of these proceedings, and to those portions of the court records sealed by the trial court in the orders on appeal.

*Id.* at 644, 493 S.E.2d at 320. We do not agree.

Our task here is to determine whether a public right of access to court proceedings and records is inherent in the open courts provision of Article I, § 18 of our state's Constitution. This Court is the only entity which can answer with finality questions concerning the proper construction and application of the North Carolina Constitution. *State v. Jackson*, 348 N.C. 644, 648, 503 S.E.2d 101, 103 (1998). In *Jackson*, we discussed at length this Court's role as final interpreter of our Constitution:

VIRMANI v. PRESBYTERIAN HEALTH SERVICES CORP.

[350 N.C. 449 (1999)]

We have said that even where provisions of the state and federal Constitutions are identical, "we have the authority to construe our own constitution differently from the construction by the United States Supreme Court of the Federal Constitution, as long as our citizens are thereby accorded no lesser rights than they are guaranteed by the parallel federal provision." *State v. Carter*, 322 N.C. 709, 713, 370 S.E.2d 553, 555 (1988). Strictly speaking, however, a state may still construe a provision of its constitution as providing less rights than are guaranteed by a parallel federal provision. Nevertheless, because the United States Constitution is binding on the states, the rights *it* guarantees must be applied to every citizen by the courts of North Carolina, so no citizen will be "accorded lesser rights" no matter how we construe the state constitution. For all practical purposes, therefore, the only significant issue for this Court when interpreting a provision of our state Constitution paralleling a provision of the United States Constitution will always be whether the state Constitution guarantees additional rights to the citizen above and beyond those guaranteed by the parallel federal provision. In this respect, the United States Constitution provides a constitutional floor of fundamental rights guaranteed all citizens of the United States, while the state constitutions frequently give citizens of individual states basic rights in addition to those guaranteed by the United States Constitution.

> States remain free to interpret their own constitutions in any way they see fit, including constructions which grant a citizen rights where none exist under the federal Constitution. *Lowe v. Tarble*, 313 N.C. 460, 462, 329 S.E.2d 648, 650 (1985). In construing the North Carolina Constitution, this Court is not bound by the decisions of federal courts, including the United States Supreme Court. [*State ex rel. Martin v.*] *Preston*, 325 N.C. [438,] 449-50, 385 S.E.2d [473,] 479 [1989].

*Jackson*, 348 N.C. at 648, 503 S.E.2d at 103-04.

This Court has previously stated that Article I, Section 18 provides the public access to our courts. *See State v. Burney*, 302 N.C. 529, 537-38, 276 S.E.2d 693, 698 (1981); *In re Nowell*, 293 N.C. 235, 249, 237 S.E.2d 246, 255 (1977); *In re Edens*, 290 N.C. 299, 306, 226 S.E.2d 5, 9-10 (1976); *Raper v. Berrier*, 246 N.C. 193, 195, 97 S.E.2d 782, 784 (1957). In *Raper*, we stated:

[T]he tradition of our courts is that their hearings shall be open. The Constitution of North Carolina so provides, Article I, Section 35 [now Section 18]. The public, and especially the parties are entitled to see and hear what goes on in the courts. That courts are open is one of the sources of their greatest strength.

*Raper*, 246 N.C. at 195, 97 S.E.2d at 784 (citations omitted). Our reference to the right of the public there was mere *obiter dictum* unnecessary to the decision of the case, however, as the issue presented in *Raper* was whether the trial court could accept evidence at a hearing from which a *party* to the case was excluded. This Court has never expressly held that Article I, Section 18 provides members of the general public a right to attend *civil* court proceedings or to inspect or copy the records of such proceedings.

We now hold that the open courts provision of Article I, Section 18 of the North Carolina Constitution guarantees a *qualified* constitutional right on the part of the public to attend civil court proceedings. However, given the facts presented here, this qualified right of public access did not preclude the trial court from giving effect to the protections of N.C.G.S. § 131E-95 by sealing the materials in question or closing the court proceedings concerning those materials.

The qualified public right of access to civil court proceedings guaranteed by Article I, Section 18 is not absolute and is subject to reasonable limitations imposed in the interest of the fair administration of justice or for other compelling public purposes. *Cf. In re Belk*, 107 N.C. App. 448, 420 S.E.2d 682 (concluding that neither the United States Constitution nor the North Carolina Constitution creates a constitutional right of the public to attend civil commitment proceedings), *appeal dismissed and disc. rev. denied*, 333 N.C. 168, 424 S.E.2d 905 (1992); *State v. Lemons*, 348 N.C. 335, 349, 501 S.E.2d 309, 318 (1998) (rights in criminal cases); *Burney*, 302 N.C. at 538, 276 S.E.2d at 699 (same). Thus, although the public has a qualified right of access to civil court proceedings and records, the trial court may limit this right when there is a compelling countervailing public interest and closure of the court proceedings or sealing of documents is required to protect such countervailing public interest. In performing this analysis, the trial court must consider alternatives to closure. Unless such an overriding interest exists, the civil court proceedings and records will be open to the public. Where the trial court closes proceedings or seals records and documents, it must make findings of fact which are specific enough to allow appellate review to deter-

mine whether the proceedings or records were required to be open to the public by virtue of the constitutional presumption of access.

[11] Turning to the facts of this case, we conclude that the trial court did not err by excluding the public from the court hearings and by sealing related peer review records which concerned confidential information pertaining to Presbyterian's medical peer review investigation of Dr. Virmani. The judges in the trial court properly sealed the Confidential Materials as well as the videotapes and transcripts of the closed hearings; in doing so, they also provided a sufficient record for our appellate review.

We begin with the presumption that the civil court proceedings and records at issue in this case must be open to the public, including the news media, under Article I, Section 18. However, the legislature has determined that this right of access is outweighed by the compelling countervailing governmental interest in protecting the confidentiality of the medical peer review process. The General Assembly has recognized the public's compelling interest in such confidentiality by enacting N.C.G.S. § 131E-95 and making the confidentiality of medical peer review investigations part of our state's public policy. Neither plaintiff nor the *Observer* challenged the constitutionality of the statute on direct appeal to the Court of Appeals. As a result, no issue concerning the constitutionality of the legislature's adoption of this public policy is before this Court. However, we need not and do not rely upon the legislature's public policy judgment in this regard in order to conclude that the trial court did not err.

In each of its oral orders closing motions hearings and sealing records in this case, the trial court independently recognized this compelling state interest, explaining in each instance that it closed the hearing because the arguments and records presented would involve confidential peer review information. Each of the written orders closing court proceedings and sealing documents and court records included similar independent findings and conclusions to the effect that, *inter alia*, the matters at issue pertained to confidential medical peer review information and that disclosing the medical review records and materials "could cause harm to plaintiff and defendant and the peer review process if left unsealed in the public record during the course of pending litigation." The findings and conclusions by the trial court are specific enough to allow us to determine whether the trial court's orders sealing documents and closing court were properly entered to serve a compelling public

interest. After reviewing the sealed Confidential Materials which were presented or considered in connection with the medical peer review hearings in question, we conclude that they all pertained to medical peer review matters and that the trial court properly sealed them. We reach the same conclusion as to the closing of the court hearings and the sealing of the videotapes and transcripts of the closed court hearings.

The public's interest in access to these court proceedings, records and documents is outweighed by the compelling public interest in protecting the confidentiality of medical peer review records in order to foster effective, frank and uninhibited exchange among medical peer review committee members. Because such open and honest communication in medical peer review proceedings helps to assure high quality public medical care, maintaining and protecting this confidentiality is in the public's best interest. Further, we conclude that the compelling countervailing public interest in such high quality public medical care overcomes the qualified public right to open civil court proceedings and records of those proceedings.

In order to safeguard the confidentiality of medical peer review information, it was appropriate under the circumstances of this case for the trial court to restrict access to the courtroom and to seal documents which were submitted to the presiding judge for consideration in ruling upon the motions seeking closure but which were never filed as part of the public records of the court. Further, there was no reasonable alternative to closure of the hearings and sealing of the documents in this case. The trial court could not allow such information to enter the public domain while the trial court determined whether it should be treated as confidential, then later withdraw it from the public domain and prevent its broader dissemination. *See Cox Broadcasting Corp. v. Cohn*, 420 U.S. at 496, 43 L. Ed. 2d at 350. For the foregoing reasons, we conclude that the public's qualified right of access to civil court proceedings and records guaranteed by Article I, Section 18 of our state Constitution was not violated by the orders of the trial court in this case. Therefore, we reverse that part of the decision of the Court of Appeals which relates to those proceedings and records.

[12] Having concluded that our state Constitution does not mandate public access to the sealed documents and record in this case, we must consider next the question of whether the United States Constitution provides the public, including the *Observer*, the right to

attend the civil court proceedings and to view the records in this case. This issue was properly presented in the Court of Appeals. As that court resolved the issue of public access to the court hearings and records on state constitutional grounds, it did not reach this question of federal law. We must address it now.

The United States Supreme Court has never held that there is a constitutional right of public access to civil court proceedings or related court files. However, the Supreme Court has held that a qualified right of the public to attend *criminal* trials is implicit in the First Amendment. *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 603-07, 73 L. Ed. 2d 248, 255-57 (1982); *Richmond Newspapers*, 448 U.S. at 580-81, 65 L. Ed. 2d at 991-93 (plurality opinion). The Supreme Court has also extended this right of access to include *voir dire* proceedings in which the jury is selected for a criminal trial, *Press-Enterprise I*, 464 U.S. 501, 78 L. Ed. 2d 629, and to preliminary hearings similar to a trial before a magistrate in criminal cases, *El Vocero de Puerto Rico*, 508 U.S. 147, 124 L. Ed. 2d 60; *Press-Enterprise II*, 478 U.S. 1, 92 L. Ed. 2d 1. The Supreme Court has stated that openness in criminal trials " 'enhances both the basic fairness of the criminal trial and the appearance of fairness so essential to public confidence in the system.' " *Press-Enterprise II*, 478 U.S. at 9, 92 L. Ed. 2d at 10 (quoting *Press-Enterprise I*, 464 U.S. at 508, 78 L. Ed. 2d at 637).

In *Press-Enterprise II*, the Supreme Court departed somewhat from its prior analysis of the public's right of access to the criminal courts as a right implicit in the First Amendment. In that case, the Supreme Court applied the twin tests of experience and logic in determining whether the First Amendment right of access attached to a trial-like preliminary hearing in a criminal case. *See Press-Enterprise II*, 478 U.S. at 8-13, 92 L. Ed. 2d at 9-13. The experience test requires evaluation of "whether the place and process have historically been open to the press and general public." *Id.* at 8, 92 L. Ed. 2d at 10. The logic test requires consideration of "whether public access plays a significant positive role in the functioning of the particular process in question." *Id.* If the proceeding in question meets both of these considerations, then a qualified First Amendment right of public access must be applied. *Id.* at 9, 92 L. Ed. 2d at 10.

However, even if a particular court proceeding passes the tests of experience and logic, the public's *qualified* right of access under the

VIRMANI v. PRESBYTERIAN HEALTH SERVICES CORP.

[350 N.C. 449 (1999)]

First Amendment may be limited by overriding rights or interests. *Id.*; *Globe Newspaper Co.*, 457 U.S. at 606, 73 L. Ed. 2d at 257. The Supreme Court has held that the circumstances in which the public may be barred from a criminal trial are limited, and that "the State's justification in denying access must be a weighty one." *Globe Newspaper Co.*, 457 U.S. at 606, 73 L. Ed. 2d at 257. "Where . . . the State attempts to deny the right of access [to criminal cases] in order to inhibit the disclosure of sensitive information, it must be shown that the denial is necessitated by a compelling governmental interest, and is narrowly tailored to serve that interest." *Id.* at 606-07, 73 L. Ed. 2d at 257. The presiding judge must consider reasonable alternatives to closing the proceeding. *Press-Enterprise II*, 478 U.S. at 14, 92 L. Ed. 2d at 14. Criminal court proceedings cannot be closed unless the trial court makes findings "specific enough that a reviewing court can determine whether the closure order was properly entered." *Press-Enterprise I*, 464 U.S. at 510, 78 L. Ed. 2d at 638; *see also Press-Enterprise II*, 478 U.S. at 13-14, 92 L. Ed. 2d at 13-14.

Where the State meets its burden of showing a compelling governmental interest, a trial court may "in the interest of the fair administration of justice impose reasonable limitations on access to a trial." *Richmond Newspapers*, 448 U.S. at 581 n.18, 65 L. Ed. 2d at 992 n.18 (plurality opinion). For example, the Supreme Court has made clear that the public's right of access to the criminal courts may be forced to yield to the government's interest in inhibiting disclosure of sensitive information, *Waller v. Georgia*, 467 U.S. 39, 81 L. Ed. 2d 31 (1984); *Globe Newspaper Co.*, 457 U.S. at 606-07, 73 L. Ed. 2d at 257-59; to a criminal defendant's right to a fair trial, *Press-Enterprise II*, 478 U.S. at 13-14, 92 L. Ed. 2d at 13-14; and to the interest of protecting victims of sex crimes from public scrutiny and embarrassment, *id.* at 9 n.2, 92 L. Ed. 2d at 11 n.2.

Although the Supreme Court has never decided the question of whether the public has a First Amendment right to attend civil court proceedings or to view civil court records, the Court has noted that civil trials historically have been presumptively open to the public. *Richmond Newspapers*, 448 U.S. at 580 n.17, 65 L. Ed. 2d at 992 n.17 (plurality opinion); *Gannett Co. v. DePasquale*, 443 U.S. 368, 386 n.15, 61 L. Ed. 2d 608, 625 n.15 (1979). Several lower federal courts have held that certain civil proceedings are presumptively open under the First Amendment. *See, e.g., Stone v. University of Md. Medical Sys. Corp.*, 855 F.2d 178, 180-81 (4th Cir. 1988) (record in civil case); *Publicker Indus. Inc. v. Cohen*, 733 F.2d 1059, 1070-71 (3d

**VIRMANI v. PRESBYTERIAN HEALTH SERVICES CORP.**

[350 N.C. 449 (1999)]

Cir. 1984) (hearing on motions for preliminary injunctions); *In re Continental Ill. Sec. Litig.*, 732 F.2d 1302, 1308-16 (7th Cir. 1984) (hearing on motion to terminate shareholder derivative claims). Although these lower courts have emphasized the strength of the First Amendment presumption of access, they have refused to define this right of access as absolute. For example, one court has stated, "Where the First Amendment guarantees access, . . . access may be denied only on the basis of a compelling governmental interest, and only if the denial is narrowly tailored to serve that interest." *Stone*, 855 F.2d at 180 (applying First Amendment access standard for criminal trials from *Press-Enterprise I*, 464 U.S. at 510, 78 L. Ed. 2d at 638, to a district court order sealing the court record of a wrongful discharge action brought by a medical school professor).

In recognizing the First Amendment right of access in criminal cases, the Supreme Court stressed "the common understanding that 'a major purpose of that Amendment was to protect the free discussion of governmental affairs.' " *Globe Newspaper Co.*, 457 U.S. at 604, 73 L. Ed. 2d at 255 (quoting *Mills v. Alabama*, 384 U.S. 214, 218, 16 L. Ed. 2d 484 (1966)). In explaining in *Globe Newspaper* why the First Amendment guarantees a right of access to criminal trials, the Supreme Court emphasized two features of the criminal justice system. It noted that "the criminal trial historically has been open to the press and general public." *Id.* at 605, 73 L. Ed. 2d at 256. It also observed that access to criminal trials

> enhances the quality and safeguards the integrity of the fact-finding process . . . [and] fosters an appearance of fairness, thereby heightening public respect for the judicial process. And in the broadest terms, public access to criminal trials permits the public to participate in and serve as a check upon the judicial process—an essential component in our structure of self-government.

*Id.* at 606, 73 L. Ed. 2d at 256-57 (footnotes omitted). Similar, but not identical, fundamental principles apply to the public's access to civil court proceedings as well.

Applying the experience and logic test set forth for criminal cases in *Press-Enterprise II*, it is questionable whether the First Amendment presumptive public right of access would attach to the matters at issue in this case. For many years now, the workings of medical review committees and the materials that they consider have been closed to the public and have been deemed confidential. In

VIRMANI v. PRESBYTERIAN HEALTH SERVICES CORP.

[350 N.C. 449 (1999)]

1981, the General Assembly enacted former N.C.G.S. § 131-170, the statutory predecessor of N.C.G.S. § 131E-95, on the theory that " 'external access to peer investigations conducted by staff committees stifles candor and inhibits objectivity.' " *Cameron v. New Hanover Mem'l Hosp.*, 58 N.C. App. at 436, 293 S.E.2d at 914, (quoting *Matchett*, 40 Cal. App. 3d at 629, 115 Cal. Rptr. at 320-21), *quoted in Shelton*, 318 N.C. at 82, 347 S.E.2d at 828. Thus, it is not at all clear that the portions of the motions hearings and the documents pertaining to Presbyterian's peer review investigation of Dr. Virmani would pass the experience prong of the public access test.

It is also questionable whether these medical peer review matters would pass the logic test. By enacting N.C.G.S. § 131E-95 and its statutory predecessor, the General Assembly has recognized that public access plays a negative role in the functioning of the medical peer review process. The trial court independently reached the same conclusion in this case.

Assuming *arguendo* that the United States Supreme Court would hold that the qualified First Amendment right of public access applies to civil cases, we conclude that the compelling public interest in protecting the confidentiality of the medical peer review process outweighs the right of access in this case and that no alternative to closure will adequately protect that interest. Therefore, we conclude that the trial court properly closed the hearings and properly sealed the Confidential Materials, videotapes, and transcripts of the closed hearings. However, for reasons previously stated in this opinion, the trial court erred in ordering that the exhibits attached to the complaint when it was initially filed with the clerk of court be withdrawn from the public record and sealed.

That part of the decision of the Court of Appeals vacating the orders of the trial court which sealed the exhibits attached to the complaint when it was originally filed is affirmed; the decision of the Court of Appeals vacating the orders of the trial court is otherwise reversed. Therefore, the decision of the Court of Appeals is affirmed in part and reversed in part. This case is remanded to the Court of Appeals for its further remand to the Superior Court, Mecklenburg County, for modification of its prior orders in a manner consistent with this opinion and for further proceedings not inconsistent with this opinion.

AFFIRMED IN PART; REVERSED IN PART AND REMANDED.

Justices MARTIN and WAINWRIGHT did not participate in the consideration or decision of this case.