ZACHARY, Judge.
 

 *475
 
 Where the New Hanover Child Support Enforcement Agency possessed an unconditional statutory right to intervene in the ongoing support dispute pending between plaintiff and defendant, the trial court did not err in permitting the agency to intervene as a matter of right.
 

 *221
 

 I. Factual and Procedural Background
 

 April R. Hunt (plaintiff) and Jeffrey H. Hunt (defendant) were married on 28 November 1992, had two children, and separated on 20 March 2010. Plaintiff initiated this action in New Hanover County District Court on 10 December 2010, seeking post-separation support and permanent alimony, an equitable distribution of the parties' marital assets with an unequal division in her favor, temporary and permanent primary custody of the parties' minor children, retroactive and prospective child support,
 
 *476
 
 and attorney's fees. On 25 February 2011, defendant, then a resident of Texas, filed a responsive pleading in which he moved to dismiss plaintiff's complaint, generally denied the allegations of plaintiff's complaint, and in his counterclaim sought temporary and permanent custody of the children, and court costs. On 9 March 2011, plaintiff filed her reply to defendant's counterclaim. On 16 March 2011, the trial court entered an order denying defendant's motion to dismiss.
 
 [1]
 
 On 17 March 2011, the trial court adopted and approved the temporary consent order negotiated by the parties, which provided that defendant pay temporary child support and 80% of the minor children's uninsured medical expenses, together with the minor children's tuition, medical and dental coverage, orthodontia cost and cellular phone coverage. Defendant was also required to pay $3,000 in retroactive child support and $2,000 in plaintiff's attorney's fees.
 

 The parties divorced on 26 August 2011. On 28 September 2011, plaintiff filed a motion to compel defendant to respond to interrogatories and to produce requested documents. On 6 October 2011, the trial entered a consent order, granting the parties joint legal custody of the minor children, with plaintiff having primary physical custody of the minor children and defendant having secondary physical custody of the minor children, setting forth a visitation schedule, providing that defendant pay $1,500 per month in child support, and requiring defendant to supply the documents requested in plaintiff's motion to compel. Plaintiff agreed to dismiss her motion to compel.
 

 On 6 May 2013, the trial court entered its order granting an unequal division of the marital estate in favor of plaintiff. The trial court also ordered payment by defendant of,
 
 inter alia,
 
 $2,000 for plaintiff's attorney's fees, various medical and orthodontic bills, the children's school tuition and fees, permanent alimony in the amount of $800 per month, and $8,000 delinquent alimony. On 5 June 2013, defendant filed notice of appeal from this order.
 

 On 6 May 2014, this Court entered an unpublished opinion on defendant's appeal from the trial court's 6 May 2013 order. We affirmed the portion of order of the trial court awarding alimony, but remanded the portion concerning equitable distribution and attorney's fees, with instructions to the trial court to make adequate findings on those issues.
 

 *477
 

 Hunt v. Hunt,
 
 ---N.C.App. ----,
 
 759 S.E.2d 712
 
 (unpublished),
 
 disc. review denied,
 

 367 N.C. 524
 
 ,
 
 762 S.E.2d 443
 
 (2014). On 24 October 2014, the trial court entered an order on remand containing additional findings of fact on the equitable distribution claim and attorney's fees.
 

 On 26 June 2013, defendant moved for a change of custody. On 30 September 2013, he withdrew this motion.
 

 On 6 November 2013, the trial court entered an "Order on Contempt" (the 2013 contempt order), finding that defendant had "wilfully [sic] failed and refused, without justification or excuse, to abide by the terms of the May 6, 2013 Order" in that he failed to pay his monthly alimony obligations, delinquent alimony, and attorney's fees, despite having the ability to do so. On 3 December 2013, the trial court entered an order for defendant's arrest based upon the 2013 contempt order.
 

 On 16 September 2014, this Court entered an unpublished opinion on defendant's appeal from the 2013 contempt order. We held that there was competent evidence to support the
 
 *222
 
 trial court's findings that defendant's failure to pay ongoing alimony payments was willful, but that there was not competent evidence to support the trial court's findings that defendant's failure to pay delinquent alimony or attorney's fees was willful. We also reaffirmed our previous ruling that the issue of attorney's fees was not properly before us. The Court therefore affirmed in part, remanded in part, and dismissed in part the trial court's order.
 
 Robbins v. Hunt,
 
 --- N.C.App. ----,
 
 765 S.E.2d 556
 
 (2014) (unpublished). On 29 October 2014, the trial court entered an order on remand containing additional findings of fact with respect to defendant's ability to pay delinquent alimony and attorney's fees, finding defendant in contempt and requiring him to pay a total of $13,200 in delinquent alimony and attorney's fees.
 

 On 12 September 2014, plaintiff filed a motion to show cause against defendant for his continuing failure to pay alimony and attorney's fees, and for the additional attorney's fees necessary to prosecute this contempt action. On 22 September 2014, plaintiff filed another motion to show cause. On 26 September 2014, the trial court issued a show cause order, requiring defendant to show cause as to why he should not be held in contempt of court. On 29 October 2014, the trial court entered another order, this one entitled "Order on Contempt" and "Order on Attorney's Fees" (the 2014 contempt order). This order found defendant in willful contempt of the 6 May 2013 order due to defendant's failure to pay alimony, and required him to pay $10,400 to purge himself of his contempt. It further required the payment of $750 in attorney's fees for
 
 *478
 
 the prosecution of this issue, and $1,900 in attorney's fees in connection with the appeal.
 

 On 2 November 2014, plaintiff applied for child support services from the New Hanover Child Support Enforcement Agency (CSEA). On 3 December 2014, CSEA filed a motion to intervene, determine support arrears, and redirect support payments. This motion alleged that plaintiff had applied for child support services, thereby entitling CSEA to intervene in the case as a matter of law, and asked that CSEA be allowed to intervene, that the trial court determine whether defendant was in arrears on his support payments, that North Carolina Child Support Centralized Collections be permitted to serve as designated payee for all support payments, and that defendant be subject to wage withholding of support payments, income tax refund intercept of any arrears, and credit bureau reporting of defendant's obligations. On 4 December 2014, CSEA filed its "Amended Motion to Intervene, Determine Arrears, and Redirect Payments." On 5 January 2015, defendant moved for a continuance in this matter in order to hire an attorney. On 14 January 2015, defendant, having secured counsel, requested another continuance. On 28 January 2015, defendant filed an affidavit in opposition to CSEA's motion to intervene, alleging only an inability to pay alimony.
 

 On 28 January 2015, the trial court heard arguments on this motion. On 1 April 2015, the trial court entered its "Order in Civil Support Action," allowing CSEA to intervene, ordering defendant to pay $1,500 per month in ongoing child support and $800 per month in ongoing alimony, ordering defendant to pay $80 per month toward his alimony arrears of $25,600 until paid in full, and ordering wage withholding. The trial court also ordered,
 
 inter alia,
 
 that North Carolina Child Support Centralized Collections be permitted to serve as designated payee for all of defendant's support payments, and that defendant's income tax refunds be subject to intercept to satisfy support arrears.
 

 Defendant appeals.
 

 II. Preservation
 

 In his affidavit in opposition to CSEA's motion to intervene, defendant did not challenge CSEA's right to intervene. Instead, defendant alleged only that he was unable to pay alimony. While the record demonstrates that a hearing was held on this motion, we do not have a transcript of this hearing. As such, there is no evidence that defendant preserved the issue of CSEA's right to intervene at trial.
 

 Nonetheless, we choose to review this matter pursuant to Rule 2 of the North Carolina Rules of Appellate Procedure.
 

 *223
 

 *479
 

 III. Standard of Review
 

 "We review de novo the grant of intervention of right under Rule 24(a)."
 
 Holly Ridge Assocs. v. N.C. Dep't of Env't & Natural Res.,
 

 361 N.C. 531
 
 , 538,
 
 648 S.E.2d 830
 
 , 835 (2007).
 

 "The prospective intervenor seeking such intervention as a matter of right under Rule 24(a)(2) must show that (1) it has a direct and immediate interest relating to the property or transaction, (2) denying intervention would result in a practical impairment of the protection of that interest, and (3) there is inadequate representation of that interest by existing parties."
 
 Virmani v. Presbyterian Health Servs. Corp.,
 

 350 N.C. 449
 
 , 459,
 
 515 S.E.2d 675
 
 , 683 (1999).
 

 IV. Argument
 

 In his sole argument on appeal, defendant contends that the trial court erred in allowing CSEA to intervene as a matter of right. We disagree.
 

 Pursuant to the North Carolina Rules of Civil Procedure, a party may intervene as a matter of right:
 

 (1) When a statute confers an unconditional right to intervene; or
 

 (2) When the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.
 

 N.C. R. Civ. P. 24(a). To establish a non-statutory right to intervene, the intervenor must show "(1) an interest relating to the property or transaction; (2) practical impairment of the protection of that interest; and (3) inadequate representation of that interest by existing parties."
 
 Hill v. Hill,
 

 121 N.C.App. 510
 
 , 511,
 
 466 S.E.2d 322
 
 , 323 (1996) (quoting
 
 Ellis v. Ellis,
 

 38 N.C.App. 81
 
 , 83,
 
 247 S.E.2d 274
 
 , 276 (1978) );
 
 see also
 

 Virmani,
 

 350 N.C. at 459
 
 ,
 
 515 S.E.2d at 683
 
 .
 

 A. Unconditional Right to Intervene
 

 Defendant offers various arguments with respect to CSEA's right to intervene, specifically concerning Rule 24(a)(2), which applies to parties without an unconditional right to intervene. Defendant's arguments are without merit.
 

 *480
 
 In 1975, Title IV-D of the Social Security Act was enacted as a joint federal and state program, establishing the "Child Support Enforcement" program. In order for a state plan to be approved, federal regulations require the states, including this State, to provide a "State plan for child and spousal support [,]" which must "provide services relating to the ... establishment, modification, or enforcement of child support obligations [.]"
 
 42 U.S.C. § 654
 
 (2014). Such services include the enforcement of "any support obligation established with respect to-(i) a child with respect to whom the State provides services under the plan; or (ii) the custodial parent of such a child [.]"
 
 42 U.S.C. § 654
 
 (4)(B). The Code of Federal Regulations further provides that "[a]n assignment of support rights, ... constitutes an obligation owed to the State by the individual responsible for providing such support."
 
 45 C.F.R. § 302.50
 
 (a).
 

 Chapter 110, Article 9 of the North Carolina General Statutes, entitled "Child Support," lays out the framework for the "administration of a program of child support enforcement" in this State. This Article provides that "[a]ny county interested in the ... support of a dependent child may institute civil or criminal proceedings ... or may
 
 take up and pursue
 
 any ... support action commenced by the mother, custodian or guardian of the child." N.C. Gen.Stat. § 110-130 (2015) (emphasis added). This statute's direction to "take up and pursue" an action clearly refers to intervention. In fact, upon receipt of an application for public assistance for a dependent child, the county department of social services has an affirmative
 
 duty
 
 to "notify the designated representative who shall take appropriate action under the Article...." N.C. Gen.Stat. § 110-138 (2015). The Article further provides, as stated above, that when a person accepts public assistance on behalf of a dependent child, that person is deemed to have made an assignment to the State or county in the amount of any payments due for the support of such child "up
 
 *224
 
 to the amount of public assistance paid" for the support of that child. N.C. Gen.Stat. § 110-137 (2015). Persons not receiving public assistance may acquire child support collection services by submitting an application and paying the fee required by statute. N.C. Gen.Stat. § 110-130.1(a) (2015). Finally, "when a child support order is being enforced under this Article [ ]" and "there is an order establishing [spousal] support," then a child support enforcement agency may also enforce the existing spousal support obligation. N.C. Gen.Stat. § 110-130.2 (2015).
 

 We hold that these statutes, taken together, demonstrate a clear objective by the federal government, taken up by our legislature and enacted in statute, to vest in child support enforcement agencies an unconditional statutory right of intervention where a person has
 
 *481
 
 accepted public assistance on behalf of a dependent child, where that person applies for and pays a fee for child support collection services, or where that person with an order under which the person is entitled to collect spousal support is also receiving child support enforcement services for a child support obligation.
 

 In the instant case, plaintiff applied for services from CSEA and paid the statutory fee, thus vesting in CSEA the right to collect support obligations on her behalf. Because this unconditional statutory right was vested in CSEA, our analysis concludes with Rule 24(a)(1). It is unnecessary to examine CSEA's interest, the impairment of that interest, or the ability of the parties to represent that interest, as these are elements of Rule 24(a)(2), which applies when the right to intervene is not unconditional.
 

 B. Timeliness of Motion to Intervene
 

 Defendant also contends that CSEA lacked the ability to intervene as a matter of right due to the untimeliness of its motion to intervene. Defendant notes that the motion to intervene was filed on 3 December 2014, more than three years after the entry of the initial child support order, and more than a year and a half after the entry of the alimony order.
 

 Defendant relies upon
 
 State Employees' Credit Union, Inc. v. Gentry,
 

 75 N.C.App. 260
 
 , 264,
 
 330 S.E.2d 645
 
 , 648 (1985), for the principle that a motion to intervene after judgment has been rendered is disfavored and will only be granted after a showing of entitlement and justification. In the instant case, however, such entitlement is visible on the face of the record. Pursuant to statute, when a person accepts public assistance on behalf of a dependent child, that person is deemed to have made an assignment to the State or county in the amount of any payments due for the support of such child "up to the amount of public assistance paid" for the support of said child. N.C. Gen.Stat. § 110-137. Further, any person not receiving public assistance may nonetheless receive the benefits of the child support program outlined in Chapter 110 by applying to the appropriate agency and paying a $25 fee. N.C. Gen.Stat. § 110-130.1(a). On 2 November 2014, plaintiff contracted with CSEA for child support services in a document explicitly granting the right to intervene to the agency. CSEA could not have intervened prior to that date; subsequent to plaintiff's execution of the contract with CSEA, plaintiff had assigned her right to payment, authorizing intervention. CSEA was entitled to intervene, and its motion to intervene, filed one month later, was timely.
 

 *482
 

 V. Conclusion
 

 CSEA enjoyed an unconditional right to intervene, which it exercised in a timely manner. The trial court did not err in allowing CSEA to exercise that right.
 

 AFFIRMED.
 

 Judges BRYANT and DILLON concur.
 

 [1]
 

 On 15 April 2011, defendant appealed the denial of his motion to dismiss to this Court. He has declined to include the result of that appeal in the record, and it is not relevant to the outcome of this case.