SciGrip, Inc. v. Osae, 2018 NCBC 10.

STATE OF NORTH CAROLINA

DURHAM COUNTY

SCIGRIP, INC. f/k/a IPS
STRUCTURAL ADHESIVES
HOLDINGS, INC. and IPS
INTERMEDIATE HOLDINGS
CORPORATION,

                Plaintiffs,

v.

SAMUEL B. OSAE and SCOTT
BADER, INC.,

                Defendants.

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
13 CVS 2854

**(REDACTED) ORDER AND OPINION
ON MOTIONS FOR SUMMARY
JUDGMENT, MOTIONS TO
EXCLUDE, AND MOTIONS TO FILE
UNDER SEAL**

1.    **THIS MATTER** is before the Court on Plaintiffs' motion for summary judgment, Defendant Samuel B. Osae's ("Osae") motion for summary judgment, Defendant Scott Bader, Inc.'s ("SBI") motion for summary judgment, Osae's motions to exclude expert testimony, and the parties' motions to file under seal. For the reasons set forth below, the Court **GRANTS in part** and **DENIES in part** the motions for summary judgment, **DENIES as moot** Osae's motions to exclude, and **GRANTS** the motions to file under seal.[1]

*Wyrick Robbins Yates & Ponton LLP, by Benjamin N. Thompson and J. Blakely Kiefer, and Lynch, Cox, Gilman & Goodman P.S.C., by Donald L. Cox and William H. Mooney, for Plaintiffs.*

---

[1] To protect the alleged trade secret information of Plaintiffs, this Order and Opinion is filed under seal and will be available, as necessary, for any appellate process. The Court will also file and publish a redacted version of this Order and Opinion for public inspection.

*Mast, Mast, Johnson, Wells & Trimyer, P.A., by George B. Mast, Charles D. Mast, and Lilly Van Patten Tuttle, for Defendant Samuel B. Osae.*

*Ogletree, Deakins, Nash, Smoak & Stewart, P.C., by Phillip J. Strach and Brodie D. Erwin, for Defendant Scott Bader, Inc.*

Robinson, Judge.

## I. INTRODUCTION

2. At the core of this litigation lies a dispute over whether the use of specific ingredients, and combinations thereof, in a structural methyl methacrylate ("MMA") adhesive formulation is generally known, precluding their status as confidential information or trade secrets. In July 2000, Plaintiffs SciGrip, Inc. and IPS Intermediate Holdings Corporation (collectively, "Plaintiffs" or "IPS") hired Osae to formulate MMA adhesives. After eight years of formulating MMA adhesives at IPS, Osae left IPS in 2008 and began working for SBI, a competitor of IPS. That same year, IPS filed a lawsuit against Osae and SBI to enforce its non-competition and confidentiality agreements with Osae, which was resolved by a Consent Order prohibiting the disclosure or use of IPS's confidential information. Just over two years after entry of the Consent Order, in February 2011, SBI filed a patent application in Europe to cover its MMA adhesives, which were developed by Osae. Later in 2011, Osae left SBI, became a member of Engineered Bonding Solutions, LLC ("EBS"), a non-party to this litigation, and filed a provisional patent application regarding EBS's MMA adhesives, which were developed by Osae.

3. Plaintiffs initiated this lawsuit, contending that certain components of their MMA adhesive formulations constitute trade secrets and confidential information.

Plaintiffs assert that Defendants misappropriated their trade secrets by using and disclosing them in the SBI and EBS patents and their respective MMA adhesive products. Further, Plaintiffs contend that such conduct was in breach of the Consent Order. Defendants' principal argument is that the components constitute neither trade secrets nor confidential information because the components were generally known.

## II. FACTUAL BACKGROUND

4. The Court does not make findings of fact when ruling on motions for summary judgment. *E.g.*, *In re Estate of Pope*, 192 N.C. App. 321, 329, 666 S.E.2d 140, 147 (2008). The following factual background, taken from the evidence submitted in support of and in opposition to the motions for summary judgment, is intended solely to provide context for the Court's analysis and ruling.

5. Plaintiffs are Delaware corporations with places of business in Durham County, North Carolina. (Am. Verified Compl. ¶¶ 1–2, ECF No. 13; Def. Osae's Answer to Am. Verified Compl. ¶¶ 1–2, ECF No. 14 ["Osae's Answer"]; Answer to Am. Compl. by Def. SBI ¶¶ 1–2, ECF No. 30 ["SBI's Answer"].)

6. SBI is an Ohio corporation that conducts business in North Carolina. (Am. Verified Compl. ¶ 3; SBI's Answer ¶ 3.)

7. Osae is a Florida resident who was formerly employed by IPS in, and a resident of, North Carolina for at least eight years. (Am. Verified Compl. ¶ 4; Osae's Answer ¶ 4; SBI's Answer ¶ 4.)

8. IPS owns, develops, and manufactures a special class of adhesives known as structural MMA adhesives. (Def. SBI's Mot. Summ. J. Ex. 23, ¶ 3, ECF No. 113 ["Briggs First Aff."].) MMA adhesives are toughened polymeric systems used to bond metals, composites, engineering plastics, and other materials. (Def. Osae's Mot. Summ. J. Ex. 1, ¶ 4, ECF No. 142 ["Petrie's Expert Report"].) The science and expertise of formulating MMA adhesives require a balance between [REDACTED], as well as [REDACTED]. (Petrie's Expert Report ¶ 34.) An MMA adhesive formulation may contain as many as twenty to thirty components, with each component having its own primary effect and interactions with other components. (Petrie's Expert Report ¶ 34.)

9. In July 2000, IPS hired Osae as an Applications and Development Manager at IPS's Durham facility. (Briggs First Aff. ¶ 4.) Osae was hired by IPS to formulate products, primarily MMA adhesives. (Def. Osae's Mot. Summ. J. Ex. 5, at 41:14−17, 53:11−54:10, ECF No. 145 ["Briggs 2014 Dep."]; Def. SBI's Mot. Summ. J. Ex. 13, at 8:20−9:3, ECF No. 114 ["Briggs 2017 Dep."].) During his time at IPS, Osae was the main formulator and developed numerous MMA adhesive products. (Def. Osae's Mot. Summ. J. Ex. 4, at 154:21−155:3, ECF No. 144 ["Osae 2014 Dep."]; Def. Osae's Mot. Summ. J. Ex. 3, at 35:4−36:12, ECF No. 143 ["Osae 2016 Dep."].)

10. Shortly after being hired, on July 31, 2000, Osae executed a Proprietary Information and Inventions Agreement (the "PII Agreement"). (IPS's Mot. Summ. J. Ex. 6, at IPS 001735, ECF No. 118.) Pursuant to the PII Agreement, Osae agreed "during the term of [his] employment and thereafter, to hold in strictest confidence,

and not to use, except for the benefit of [IPS], or to disclose to any person or entity . . . any 'Proprietary Information.'" (IPS's Mot. Summ. J. Ex. 6, at IPS 001733.)

11. Further, Osae executed two Nonqualified Stock Option Agreements (the "Stock Agreements") dated December 21, 2006 and January 4, 2008. (IPS's Mot. Summ. J. Ex. 6, at IPS 001745–58.) Pursuant to the Stock Agreements, IPS granted Osae stock options, and Osae agreed to "maintain the confidentiality of all non-public information relating to" Plaintiffs. (IPS's Mot. Summ. J. Ex. 6, at IPS 001748, 001755.) The Stock Agreements also contained a non-competition provision prohibiting Osae from working for a competitor of IPS at any time beginning on the date of the grant and ending either one year (the 2008 agreement) or two years (the 2006 agreement) following Osae's termination or resignation from IPS. (IPS's Mot. Summ. J. Ex. 6, at IPS 001748–49, 001755–56.)

12. In August 2008, Osae left IPS and, shortly thereafter, began working for SBI, a competitor of IPS. (Osae 2014 Dep. 184:17–19; Osae 2016 Dep. 12:16–18; Briggs First Aff. ¶ 6.) This caused IPS to bring a lawsuit in Durham County, North Carolina Superior Court against Osae and SBI to enforce the PII Agreement and Stock Agreements, *IPS Structural Adhesives Holdings, Inc. v. Osae*, Civil Action No. 08 CVS 6191. (Briggs First Aff. ¶ 7; IPS's Mot. Summ. J. Ex. 11, ECF No. 108.)

13. On December 15, 2008, the parties entered into a Consent Order resolving the prior litigation. (Am. Verified Compl. Ex. B.) The Consent Order prohibited Osae from disclosing, and SBI from using, IPS's confidential information. (Am. Verified Compl. Ex. B, at 4.) The Consent Order permitted Osae to work for SBI on the

condition that he perform any and all laboratory work in the United Kingdom until January 1, 2010. (Am. Verified Compl. Ex. B, at 4.)

14.    In April 2009, SBI began preparing a patent application to cover its MMA adhesives—which it named its Crestabond products—that were being developed by Osae. (IPS's Mot. Summ. J. Ex. 8, at 154:3–10, ECF No. 119.) In February 2011, SBI filed the patent application in Europe, which was published on September 1, 2011 (the "SBI Patent"). (Briggs First Aff. ¶ 11; IPS's Mot. Summ. J. Ex. 20, ECF No. 108.) The SBI Patent publicly disclosed various components used in SBI's MMA products. (*Compare* IPS's Mot. Summ. J. Ex. 20, at [REDACTED], *with* Petrie's Expert Report 18, 21, 23–24.)

15.    In or around April 2011, Plaintiffs became concerned about the work Osae may have been doing at SBI. (*See* Briggs 2017 Dep. 61:7–9, 63:1–13.) Plaintiffs obtained a SBI product sample and hired Chemir Analytical Services ("Chemir") to perform a deformulation analysis of the sample in order to get a first read on the product. (Briggs 2017 Dep. 61:7–13, 64:1–4, 65:3–7.) A deformulation analysis has two objectives: one is to identify the various components present in the formulation, and another is to determine how much of each component is present in the formulation. (Def. Osae's Mot. Summ. J. Ex. 2, at 121:1–12, ECF No. 143.) Chemir's deformulation of SBI's product was documented in an analysis report dated April 28, 2011 (the "Chemir Report"). (Def. Osae's Mot. Summ. J. Ex. 9, ECF No. 147.)

16.    Around this same time, while Osae was still employed by SBI, Osae started doing development work for EBS. (Osae 2016 Dep. 59:17–60:2.) EBS develops and

sells MMA adhesive products that compete with Plaintiffs' products. (Resp. Opp'n Osae's Mot. Summ. J. Ex. 20, Req. for Admis. 9, 11, ECF No. 241.14.) In July 2011, Osae became a member of EBS, (Osae 2016 Dep. 60:23–25), and on August 26, 2011, Osae resigned from SBI and became EBS's Vice President of Technology, (Osae 2014 Dep. 10:19–11:7, 84:10–12). Within one month thereafter, on September 22, 2011, EBS filed a provisional patent application with the United States Patent and Trademark Office regarding its MMA adhesives—which EBS named its Acralock products—that was published on June 21, 2016 (the "EBS Patent"). (IPS's Mot. Summ. J. Ex. 25, ECF No. 109.) Osae developed all of EBS's Acralock products. (Osae 2014 Dep. 83:22–24.)

17. Over this same general timeframe, IPS was engaging in business discussions with one of its competitors, [REDACTED], who was interested in acquiring IPS. (Briggs 2014 Dep. 121:24–122:1.) During a meeting in or around December 2011 or January 2012, [REDACTED] raised concerns about former employees and disclosures of IPS's product formulations. (Briggs 2014 Dep. 122:1–7, 122:24–25, 123:6–12.) [REDACTED] specifically mentioned Osae and asked Paul Briggs ("Briggs"), the chief technology officer of IPS and Osae's former boss, if he was aware of the SBI Patent. (Briggs 2014 Dep. 26:6–11, 122:7–9; Osae 2014 Dep. 155:4–6.) Briggs was not aware of the SBI Patent until [REDACTED] brought it to Briggs's attention. (Briggs 2014 Dep. 122:16–23.) [REDACTED] expressed concern that the SBI Patent would materially and negatively affect IPS's value and,

ultimately, [REDACTED] lost interest in acquiring IPS.  (Briggs 2014 Dep. 123:15−18.)

18.    Plaintiffs contend that certain components of their MMA adhesive formulations are trade secrets.  (Br. Supp. IPS's Mot. Summ. J. 9−10, ECF No. 139.) Plaintiffs assert that both Defendants misappropriated their trade secrets by disclosing the components in the SBI Patent and that Osae misappropriated these same trade secrets by disclosing the components in the EBS Patent and using the components in developing and commercializing EBS's MMA adhesives.  (Br. Supp. IPS's Mot. Summ. J. 20; Reply to Osae's Opp'n to IPS's Mot. Summ. J. 12−13, ECF No. 257.)  Specifically, Plaintiffs contend that the following components constitute their trade secrets:

- [REDACTED]

- [REDACTED]

- [REDACTED]

- [REDACTED]

- [REDACTED].  (Br. Supp. IPS's Mot. Summ. J. 9−10.)

Plaintiffs' alleged trade secrets are collectively referred to herein as the "Components."

## III.    PROCEDURAL HISTORY

19.    The Court sets forth here only those portions of the procedural history relevant to its determination of the motions.

20. Plaintiffs filed their complaint on May 3, 2013 against Osae and their amended complaint on December 1, 2014 against Osae and SBI. The amended complaint asserts the following claims: (1) breach of contract; (2) a second count for breach of contract against Osae; (3) misappropriation of trade secrets; (4) unfair or deceptive trade practices in violation of N.C. Gen. Stat. § 75-1.1 ("UDTPA"); and (5) punitive damages. (Am. Verified Compl. 9–13.)

21. Osae filed his answer to the amended complaint on January 5, 2015.

22. This action was designated as a mandatory complex business case by order of the Chief Justice of the Supreme Court of North Carolina dated January 8, 2015, and assigned to Judge Bledsoe by order of Chief Business Court Judge James L. Gale dated January 9, 2015. This case was later reassigned to the undersigned by order dated July 5, 2016.

23. SBI filed its answer to the amended complaint on March 9, 2015.

24. Following discovery, on May 31, 2017, the parties filed their motions for summary judgment and Osae filed his motions to exclude. Plaintiffs move for summary judgment in their favor on the issue of Defendants' liability on all of Plaintiffs' claims, save and except for Plaintiffs' request for punitive damages. SBI moves for summary judgment requesting dismissal of all of Plaintiffs' claims. Osae moves for summary judgment on Plaintiffs' misappropriation of trade secrets and UDTPA claims, and Plaintiffs' request for punitive damages. Osae's motions to exclude seek to exclude testimony of two of Plaintiffs' experts, Michael A. Paschall ("Paschall") and Edward M. Petrie ("Petrie").

25. Throughout briefing on the motions for summary judgment and motions to exclude, the parties filed a significant number of documents under seal and numerous motions to file under seal.

26. The motions have been fully briefed, and the Court held a hearing on the motions on September 28, 2017. The motions are now ripe for resolution.

## IV. SUMMARY JUDGMENT STANDARD

27. Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. Gen. Stat. § 1A-1, Rule 56(c). "A 'genuine issue' is one that can be maintained by substantial evidence." *Dobson v. Harris*, 352 N.C. 77, 83, 530 S.E.2d 829, 835 (2000). The moving party bears the burden of showing that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. *Hensley v. Nat'l Freight Transp., Inc.*, 193 N.C. App. 561, 563, 668 S.E.2d 349, 351 (2008). The movant may make the required showing by proving that "an essential element of the opposing party's claim does not exist, cannot be proven at trial, or would be barred by an affirmative defense, or by showing through discovery that the opposing party cannot produce evidence to support an essential element of her claim." *Dobson*, 352 N.C. at 83, 530 S.E.2d at 835 (citations omitted).

28. "Once the party seeking summary judgment makes the required showing, the burden shifts to the nonmoving party to produce a forecast of evidence

demonstrating specific facts, as opposed to allegations, showing that he can at least establish a *prima facie* case at trial." *Gaunt v. Pittaway*, 139 N.C. App. 778, 784−85, 534 S.E.2d 660, 664 (2000). The Court must view the evidence in the light most favorable to the nonmovant. *Dobson*, 352 N.C. at 83, 530 S.E.2d at 835. However, the nonmovant "may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If [the nonmovant] does not so respond, summary judgment, if appropriate, shall be entered against [the nonmovant]." N.C. Gen. Stat. § 1A-1, Rule 56(e).

## V. MOTIONS FOR SUMMARY JUDGMENT

### A. Misappropriation of Trade Secrets

29. Plaintiffs' misappropriation of trade secrets claim is based on Defendants' alleged misappropriation in the SBI Patent and SBI products, as well as Osae's alleged misappropriation in the EBS Patent and EBS products. The Court addresses each in turn.

30. SBI argues that it is entitled to summary judgment on Plaintiffs' trade secrets claim because the alleged misappropriation occurred outside North Carolina and, under the *lex loci delicti* test, the North Carolina Trade Secrets Protection Act ("TSPA") does not apply to misappropriation that occurred outside the State. (Def. SBI's Mem. Supp. Mot. Summ. J. 9−10, ECF No. 92.) Conversely, Plaintiffs argue that, under the most significant relationship test, the TSPA applies because North

Carolina has the most significant relationship to the events giving rise to Defendants' misappropriation. (Resp. Opp'n Bader's Mot. Summ. J. 18–20, ECF No. 243.)

31. Under North Carolina conflict of laws principles, matters affecting the substantial rights of the parties are determined by *lex loci*, the law of the situs of the claim, and remedial or procedural rights are determined by *lex fori*, the law of the forum. *E.g., Harco Nat'l Ins. Co. v. Grant Thornton LLP*, 206 N.C. App. 687, 692, 698 S.E.2d 719, 722 (2010).

32. Plaintiffs argue that the most significant relationship test is the appropriate choice of law rule to apply to their trade secrets claim. In support of this argument, Plaintiffs rely on case law analyzing the appropriate choice of law rule applicable to UDTPA claims, not TSPA claims. (Resp. Opp'n Bader's Mot. Summ. J. 18–19.) As these decisions recognize, our Court of Appeals has applied either the *lex loci delicti* test or the most significant relationship test to UDTPA claims, and which test is the appropriate rule has not been resolved by our Supreme Court. *See Window World of Baton Rouge, LLC v. Window World, Inc.*, 2017 NCBC LEXIS 60, at *25–26 (N.C. Super. Ct. July 12, 2017); *RoundPoint Mortg. Co. v. Florez*, 2016 NCBC LEXIS 18, at *57 (N.C. Super. Ct. Feb. 18, 2016).

33. Nevertheless, even assuming *arguendo* that the conflict of laws analysis applicable to UDTPA claims is also applicable to TSPA claims, "this Court recently concluded that the Supreme Court of North Carolina will likely apply the *lex[] loci* rule to [UDTPA] claims based on its rejection of the modern trend towards the 'most significant relationship' test in the court's *Boudreau* [*v. Baughman*, 322 N.C. 331, 368

S.E.2d 849 (1988)] decision and has applied the *lex[] loci* rule to such claims." *Window World of Baton Rouge, LLC*, 2017 NCBC LEXIS 60, at *26. Therefore, the Court applies the *lex loci* test to Plaintiffs' TSPA claim.

34. Misappropriation of trade secrets is an action sounding in tort and, thus, *lex loci delicti* is the applicable choice of law test. *See Harco Nat'l Ins. Co.*, 206 N.C. App. at 692, 698 S.E.2d at 722. Under this test, the situs of the claim is the state where the injury or harm was sustained or suffered—the state "where the last act occurred giving rise to [the] injury." *Id.* at 694, 698 S.E.2d at 724 (alteration in original) (quoting *United Virginia Bank v. Air-Lift Assocs., Inc.*, 79 N.C. App. 315, 321, 339 S.E.2d 90, 94 (1986)).

35. The last act that gives rise to plaintiffs' injury will be different depending on the claim alleged. *Associated Packaging, Inc. v. Jackson Paper Mfg. Co.*, 2012 NCBC LEXIS 13, at *20 (N.C. Super. Ct. Mar. 1, 2012). The TSPA defines "misappropriation" as "acquisition, disclosure, or use of a trade secret of another without express or implied authority or consent, unless such trade secret was arrived at by independent development, reverse engineering, or was obtained from another person with a right to disclose the trade secret." N.C. Gen. Stat. § 66-152(1). Misappropriation occurs when defendant acquires, discloses, or uses another's trade secret without the owner's consent or authority. *Ge Betz, Inc. v. Conrad*, 231 N.C. App. 214, 233, 752 S.E.2d 634, 649 (2013). Although case law from our appellate courts offers little guidance on application of the *lex loci delicti* test in the context of a misappropriation of trade secrets claim, North Carolina federal courts applying

North Carolina law, as well as other jurisdictions, have held that the *lex loci delicti* "is not the place where the information was learned, but where the tortious act of misappropriation and use of the trade secret occurred." *Domtar AI Inc. v. J.D. Irving, Ltd.*, 43 F. Supp. 3d 635, 641 (E.D.N.C. 2014) (concluding that plaintiffs could not bring a claim under North Carolina's TSPA because defendants' alleged misappropriation occurred in Canada); *3A Composites USA, Inc. v. United Indus., Inc.*, No. 5:14-CV-5147, 2015 U.S. Dist. LEXIS 122745, at *10 (W.D. Ark. Sept. 15, 2015) (applying North Carolina conflict of laws rules and following the approach taken in *Domtar*); *Chattery Int'l, Inc. v. JoLida, Inc.*, No. WDQ-10-2236, 2012 U.S. Dist. LEXIS 57512, at *12−13 (D. Md. Apr. 24, 2012) (applying the *lex loci delicti* rule and stating that "[m]isappropriation occurs where the misappropriated information is received and used, not necessarily where it was taken or where the economic harm is felt").

36.     Here, Plaintiffs do not contend that Osae's acquisition of the Components—which undisputedly occurred in North Carolina within the authorized scope of his employment—was wrongful.     Instead, Plaintiffs argue that Defendants misappropriated their trade secrets by using such trade secrets in the SBI Patent and SBI products. (*E.g.*, Br. Supp. IPS's Mot. Summ. J. 23.)  Assuming the Components constitute trade secrets and that Defendants knew or should have known of the trade secrets, unauthorized use thereof in the SBI Patent and SBI products constitutes misappropriation in violation of the TSPA.  It is undisputed, however, that the SBI Patent application that allegedly used Plaintiffs' trade secrets was filed in Europe.

(Briggs First Aff. ¶ 11.) Further, SBI introduced substantial evidence that Osae did all his product development work for SBI at its headquarters and lab facilities in the United Kingdom, and that any lab work that Osae may have done in the United States was done at SBI's applications lab in Ohio. (Def. SBI's Mot. Summ. J. Ex. 1, at 19:17−25, 36:2−37:2, 37:19−38:9, 74:11−17, 88:2−25, ECF No. 103; Def. SBI's Mot. Summ. J. Ex. 2, at 21:3−9, ECF No. 103; Osae 2014 Dep. 33:15−21, 34:2−3, 136:9−10; Osae 2016 Dep. 18:23−24, 20:17−23, 67:8−17, 93:9−16, 105:1−6, 117:11−23.)

37. Nevertheless, Plaintiffs argue that it is undisputed that Osae performed work on behalf of SBI in North Carolina, pointing to evidence that Osae lived in North Carolina until July 2011 and owned a home in North Carolina as of December 15, 2014 where his son resided. (Resp. Opp'n Bader's Mot. Summ. J. 19.) The fact that Osae's residence was located in North Carolina, however, is not determinative of whether any alleged misappropriation occurred in the State. The undisputed evidence tends to show that Osae worked at SBI's facilities in the United Kingdom for three years from the end of 2008 to August 2011—the time period during which the alleged misappropriation occurred. While Plaintiffs have come forward with evidence that Osae frequently traveled back and forth between the United Kingdom and the United States during that timeframe, Plaintiffs have failed to come forward with sufficient evidence of misappropriation in North Carolina so as to create a genuine issue of material fact.

38. Plaintiffs also argue that Osae misappropriated their trade secrets by using the Components in the EBS Patent and EBS products. (Reply to Osae's Opp'n to

IPS's Mot. Summ. J. 11−13.) Again, however, there is no evidence that this misappropriation occurred in North Carolina. Plaintiffs' evidence of Osae's misappropriation in the EBS Patent and EBS products is limited to the similarities between the formulations disclosed in the EBS Patent and Plaintiffs' formulations, (Petrie's Expert Report 12−13, 17), that the EBS Patent application was filed only one month after Osae started working at EBS, (Osae 2014 Dep. 84:10−12; Osae 2016 Dep. 59:3−5; IPS's Mot. Summ. J. Ex. 25), and that the first EBS Acralock product was introduced to the market less than four months after Osae started working at EBS, (Petrie's Expert Report 14; Osae 2014 Dep. 84:13−14). Plaintiffs presented no evidence tending to indicate that a misappropriation occurred in North Carolina. The only evidence as to where this alleged misappropriation occurred tends to show that, at the time the EBS Patent application was filed in September 2011, Osae resided in Titusville, Florida, where he currently resides and where EBS's lab is located. (Osae 2014 Dep. 10:9−11:1, 26:15−16.) The evidence indicates that EBS does not have a laboratory or an office in North Carolina. (Osae 2014 Dep. 26:17−20.)

39. Therefore, because the undisputed evidence demonstrates that the alleged misappropriation occurred outside the State of North Carolina, Plaintiffs cannot bring a claim under the North Carolina TSPA and, accordingly, the Court grants summary judgment in favor of Defendants on Plaintiffs' misappropriation of trade secrets claim and, as a necessary result, denies Plaintiffs' motion for summary judgment on this claim.

## B.  Breach of Contract

40.  Plaintiffs' first count for breach of contract, brought against both SBI and Osae, is based on Defendants' disclosure and use of the Components in the SBI Patent and SBI products.  Plaintiffs' second count for breach of contract, brought solely against Osae, is based on Osae's use of the Components in the EBS Patent and EBS products.  Plaintiffs seek summary judgment on the issue of Defendants' liability on both of their breach of contract claims, and SBI seeks summary judgment on Plaintiffs' first count for breach of contract against it.  Osae does not seek summary judgment on Plaintiffs' breach of contract claims.

41.  As an initial matter, the parties do not dispute that North Carolina law applies to Plaintiffs' breach of contract claims as the Consent Order was entered in North Carolina.  *See Cable Tel Servs., Inc. v. Overland Contracting, Inc.*, 154 N.C. App. 639, 642, 574 S.E.2d 31, 33 (2002) ("[T]he interpretation of a contract is governed by the law of the place where the contract was made.").  In order to establish a claim for breach of contract, Plaintiffs must prove that a valid contract existed between the parties and that Defendants breached the terms of that contract.  *Poor v. Hill*, 138 N.C. App. 19, 26, 530 S.E.2d 838, 843 (2000).  Plaintiffs argue, and Defendants do not dispute, that the Consent Order is a valid contract.  *Myers v. Myers*, 213 N.C. App. 171, 175, 714 S.E.2d 194, 198 (2011) ("Our Court has previously held that, as a consent order is merely a court-approved contract, it is subject to the rules of contract interpretation." (quotation marks omitted)).  The Consent Order provides, in relevant part, the following:

> Osae has not and will not, directly or indirectly, communicate with, disclose, reveal, or otherwise share any of Plaintiffs' confidential information as described in the PII Agreement and to which he may have had access while employed by Plaintiffs, and [SBI] has agreed that it shall not solicit or accept, receive, gain access to, or use directly or indirectly any such confidential information.

(Am. Verified Compl. Ex. B, at 4.)  "Confidential information," referred to as "Proprietary Information" in the PII Agreement, is defined in both the Consent Order and the PII Agreement as

> any information, technical or nontechnical, that derives independent economic value, actual or potential, from not being known to the public or other persons outside [IPS] who can obtain economic value from its disclosure or use, and includes information of [IPS], its customers, suppliers, licensors, licensees, distributors and other persons and entities with whom [IPS] does business.

(Am. Verified Compl. Ex. B, at 2 (alterations in original).)

### 1. Plaintiffs' First Count for Breach of Contract Against Osae and SBI.

42. Plaintiffs argue that there is no genuine issue of material fact that Osae disclosed and SBI used the Components in the SBI Patent in breach of the Consent Order. (Br. Supp. IPS's Mot. Summ. J. 26–27.)  SBI argues that it is entitled to summary judgment on Plaintiffs' breach of contract claim against it on the grounds that the Consent Order is overbroad and unenforceable as a matter of law, Plaintiffs have failed to come forward with sufficient evidence of intentional and willful conduct, and the claim is barred by the statute of limitations. (Def. SBI's Mem. Supp. Mot. Summ. J. 7–8, 20–21.)  Osae argues that there are genuine issues of material fact as to whether the Components constitute confidential information under the Consent Order and, as such, Plaintiffs are not entitled to summary judgment. (Def.

Osae's Resp. Br. to Pls.' Br. Supp. Pls.' Mot. Summ. J. 23–24, ECF No. 249.) The Court addresses each of these arguments in turn.

### a. The Consent Order is enforceable as a matter of law.

43. SBI argues that the Consent Order is unenforceable because it incorporates by reference the PII Agreement and its definition of confidential information in violation of Rule 65(d). (Def. SBI's Mem. Supp. Mot. Summ. J. 20.) Rule 65(d) provides that "[e]very order granting an injunction and every restraining order . . . shall describe in reasonable detail, and not by reference to the complaint or other document, the act or acts enjoined or restrained[.]" N.C. Gen. Stat. § 1A-1, Rule 65(d). As an initial matter, Rule 65(d) applies to orders granting an injunction and restraining orders, not a consent order resolving all claims between the parties. Further, contrary to SBI's contention, the Consent Order does not merely incorporate by reference the PII Agreement's definition of confidential information—the Consent Order expressly recites the definition such that reference to the PII Agreement is not necessary.

44. SBI next argues that the Consent Order is unenforceable because the definition of confidential information is overbroad. (Def. SBI's Mem. Supp. Mot. Summ. J. 20–21.) Even assuming *arguendo* that the Consent Order is subject to the same strictures that regulate an employer's right to restrict an employee's competition, it is well settled that, while covenants not to compete are not favored by the law, *VisionAIR, Inc. v. James*, 167 N.C. App. 504, 508, 606 S.E.2d 359, 362 (2004), "[a]n agreement is not in restraint of trade . . . if it does not seek to prevent a party

from engaging in a similar business in competition with the promisee, but instead seeks to prevent the disclosure or use of confidential information[,]" *Chemimetals Processing, Inc. v. McEneny*, 124 N.C. App. 194, 197, 476 S.E.2d 374, 376 (1996); *see also Syndicated Servs., Inc. v. Yarbrough*, 2017 NCBC LEXIS 13, at *14 (N.C. Super. Ct. Feb. 15, 2017) ("North Carolina courts have upheld agreements that merely prevent an employee from disclosing or using the employer's confidential information, rather than prohibiting the employee from engaging in a competing business, as protecting a legitimate business interest of the employer."). A confidentiality agreement is enforceable as long as it protects a legitimate business interest of the employer. *Chemimetals Processing, Inc.*, 124 N.C. App. at 197, 476 S.E.2d at 377; *Amerigas Propane, L.P. v. Coffey*, 2015 NCBC LEXIS 98, at *19 (N.C. Super. Ct. Oct. 15, 2015). "[A] covenant is reasonably necessary for the protection of a legitimate business interest 'if the nature of the employment is such as will . . . enable [the employee] to acquire valuable information as to the nature and character of the business . . . .'" *Medical Staffing Network, Inc. v. Ridgway*, 194 N.C. App. 649, 656, 670 S.E.2d 321, 327 (2009) (quoting *A.E.P. Indus. v. McClure*, 308 N.C. 393, 408, 302 S.E.2d 754, 763 (1983)).

45. Here, the confidentiality provision seeks to prevent the disclosure of Plaintiffs' confidential information to the public, including necessarily Plaintiffs' competitors. During Osae's employment with IPS, as the main formulator of IPS's MMA adhesives, Osae was privy to valuable information about IPS's business and

MMA adhesive formulations. The confidentiality provision protects IPS's legitimate business interest in preventing disclosure and use of this information.

46. To the extent that SBI seeks summary judgment on the ground that the Consent Order is overbroad and unenforceable, SBI's motion is denied.

### b. A showing of intentional or willful conduct is not required to establish breach.

47. SBI next argues that under the plain language of the Consent Order, Plaintiffs must show that SBI engaged in intentional or willful conduct in order to establish breach. (Def. SBI's Mem. Supp. Mot. Summ. J. 21.) SBI argues that the ordinary meaning of "solicit," "accept," and "receive" all require knowing, affirmative action. (Def. SBI's Mem. Supp. Mot. Summ. J. 21.)

48. The Court need not address whether these terms require knowing, affirmative action because the Consent Order also prohibits SBI from using, directly or indirectly, Plaintiffs' confidential information. The undisputed evidence shows that SBI used the Components in the SBI Patent. (IPS's Mot. Summ. J. Ex. 20, at [REDACTED]; Petrie's Expert Report 16; Osae 2014 Dep. 105:8−15.) Thus, SBI's motion for summary judgment on the ground that a showing of intentional or willful conduct is required to establish breach is denied.

c.      **There are genuine issues of material fact as to whether Plaintiffs' breach of contract claim against SBI is barred by the statute of limitations.**

49.     SBI argues that it is entitled to summary judgment on Plaintiffs' breach of contract claim because it was filed outside the applicable statute of limitations.[2] (Def. SBI's Mem. Supp. Mot. Summ. J. 7−8.)

50.     A claim for breach of contract is subject to a three-year statute of limitations.  N.C. Gen. Stat. § 1-52(1).  A cause of action for breach of contract accrues upon notice of the breach.  *N.C. Farm Bureau Mut. Ins. Co. v. Hull*, 795 S.E.2d 420, 422 (N.C. Ct. App. 2016*); Haigh v. Superior Ins. Mgmt. Grp., Inc.*, 2017 NCBC LEXIS 100, at *16 (N.C. Super. Ct. Oct. 24, 2017).  "[W]hen the party moving for summary judgment pleads the statute of limitations, 'the burden is then placed upon the [non-movant] to offer a forecast of evidence showing that the action was instituted within the permissible period after the accrual of the cause of action.'"  *PharmaResearch Corp. v. Mash*, 163 N.C. App. 419, 424, 594 S.E.2d 148, 152 (2004) (second alteration in original) (quoting *Pembee Mfg. Corp. v. Cape Fear Constr. Co.*, 313 N.C. 488, 491, 329 S.E.2d 350, 353 (1985)).  Whether a claim is barred by the statute of limitations is a mixed question of law and fact.  *Stratton v. Royal Bank of Can.*, 211 N.C. App. 78, 81, 712 S.E.2d 221, 226 (2011).  "If a plaintiff's claim is barred by the running of the applicable statute of limitations, summary judgment in favor of a defendant is

---

[2] While Plaintiffs initially sued Osae on May 3, 2013, Plaintiffs did not bring their claims against SBI until they filed their amended complaint on December 1, 2014. Thus, at issue is whether the statute of limitations bars Plaintiffs' breach of contract claim only as to SBI, not Osae.

appropriate." *Lockerman v. S. River Elec. Membership Corp.*, 794 S.E.2d 346, 354 (N.C. Ct. App. 2016). "When, however, the evidence is sufficient to support an inference that the limitations period has not expired, the issue should be submitted to the jury." *Baum v. John R. Poore Builder, Inc.*, 183 N.C. App. 75, 81, 643 S.E.2d 607, 611 (2007).

51. Here, SBI argues that Plaintiffs were aware, or should have been aware, of SBI's alleged breach when it received the Chemir Report dated April 28, 2011 and, as such, the statute of limitations for Plaintiffs' breach of contract action expired on April 28, 2014, several months before Plaintiffs first asserted claims against SBI on December 1, 2014. (Def. SBI's Mem. Supp. Mot. Summ. J. 8.) Accordingly, if Plaintiffs had notice of SBI's breach upon receipt of the Chemir Report, then Plaintiffs' claim is time barred.

52. Conversely, Plaintiffs argue that the statute of limitations did not begin to run until December 2011 or January 2012 when they first learned of the SBI Patent during a meeting with [REDACTED] and, as such, the statute of limitations for Plaintiffs' breach of contract action did not expire until December 2014 or January 2015. (Resp. Opp'n Bader's Mot. Summ. J. 21−23.)

53. The evidence indicates that in April 2011, Plaintiffs were concerned about Osae's work with SBI and hired Chemir to identify the components of an SBI structural adhesive product that Plaintiffs obtained a sample of. (Briggs 2017 Dep. 61:7−13, 63:1−13, 64:1−4, 65:3−7.) The Chemir Report disclosed that SBI's product contained [REDACTED]. (Briggs 2017 Dep. 64:10−65:1; Petrie Dep. 89:2−8.) Briggs

testified that Plaintiffs did not know from the Chemir Report which other materials the product may have contained because it was only an analysis to get a first read on the product to see if Plaintiffs "should be concerned about what [Osae] was doing, and the answer was yes." (Briggs 2017 Dep. 65:3–7.) The Chemir Report did not disclose the presence of any of the Components which Plaintiffs contend constitutes their confidential information. (*See* Def. Osae's Mot. Summ. J. Ex. 9.) Plaintiffs point to evidence tending to show that they did not learn of Defendants' use of the Components until it learned of the SBI Patent during a meeting with [REDACTED] in December 2011 or January 2012. Briggs testified that during this meeting, a [REDACTED] representative raised concerns about former employees and disclosures of IPS's products and specifically mentioned Osae and the SBI Patent. (Briggs 2014 Dep. 122:1–9, 122:24–25, 123:6–12.) Briggs testified that he was not aware of the SBI Patent until [REDACTED] brought it to his attention during this meeting. (Briggs 2014 Dep. 122:16–23.)

54. The Court concludes that there are genuine issues of material fact as to when Plaintiffs first had notice of Defendants' use of Plaintiffs' confidential information. Although the evidence tends to show that the Chemir Report caused Plaintiffs to be concerned about Osae's work at SBI, the Chemir Report did not indicate that Defendants were using Plaintiffs' confidential information. Plaintiffs' evidence is sufficient to support an inference that Defendants' use of Plaintiffs' confidential information was not reasonably apparent until Plaintiffs' meeting with [REDACTED]. The issue of whether Plaintiffs knew or should have known of their

potential claim must be determined by a jury and, accordingly, SBI's motion for summary judgment on this ground is denied.

> **d.** **There is no genuine issue of material fact that the Components, save and except for [REDACTED], were not generally known prior to Defendants' use and disclosure thereof.**

55. Osae argues that there are genuine issues of material fact as to whether the Components constitute confidential information, contending that there is sufficient evidence that the information was known to the general public and the structural adhesive industry to deny Plaintiffs' motion for summary judgment as to the breach of contract claims brought against him. (Def. Osae's Resp. Br. to Pls.' Br. Supp. Pls.' Mot. Summ. J. 24.)

56. As to the [REDACTED], the evidence demonstrates that there are [REDACTED]. (Petrie's Expert Report 21.) [REDACTED]. (Petrie's Expert Report 21.) The undisputed evidence tends to show that the first public declaration of [REDACTED] in an MMA adhesive was the SBI Patent. (Petrie's Expert Report ¶ 47; Def. Osae's Mot. Summ. J. Ex. 12, at 52:6−8, 57:21−25, ECF No. 148 ["Petrie Dep."].)

57. Osae argues that the evidence shows that neoprene vendors advise formulators to [REDACTED]. (Def. Osae's Mem. Supp. Mot. Summ. J. 9, ECF No. 99.) Contrary to Osae's contention, however, there is no evidence that vendors advise formulators to [REDACTED] the [REDACTED] at issue here. At best, the evidence shows that neoprene vendors in general advise formulators to [REDACTED]. (Osae 2016 Dep. 41:24−42:1; Def. Osae's Mot. Summ. J. Ex. 2, at 57:12−16.) Osae further

contends that literature published by DuPont, the original developer of neoprene, discloses [REDACTED] regularly used in contact cements. (Def. SBI's Mem. Supp. Mot. Summ. J. Ex. 14, at Def.'s Ex. 172, ECF No. 151.) This literature pertains to contact adhesives, not structural adhesives. (Def. SBI's Mem. Supp. Mot. Summ. J. Ex. 14, at Def.'s Ex. 172.) Further, the fact that DuPont disclosed the use of [REDACTED] is irrelevant to whether a [REDACTED] was generally known.

58. As to the [REDACTED], the undisputed evidence tends to show that it was not previously disclosed in the MMA adhesive patent or technical literature prior to the SBI Patent. (Petrie's Expert Report ¶ 61.) The record is devoid of any evidence that use of the [REDACTED] in an MMA adhesive was known outside of IPS.

59. As to [REDACTED], the evidence tends to show that use of [REDACTED] in an MMA adhesive was not disclosed in the patent or technical literature prior to the SBI Patent. (Petrie's Expert Report ¶ 55; Petrie Dep. 38:21−25, 64:16−18.) There is other evidence, however, tending to show that [REDACTED], CD-9052, had been publically disclosed in several patents—[REDACTED]. (Briggs 2014 Dep. 69:9−13; Def. SBI's Mot. Summ. J. Ex. 22, Req. for Admis. 25, ECF No. 113; Petrie's Expert Report ¶¶ 53, 55.) In light of the evidence [REDACTED], and use of [REDACTED] was publically known, the Court concludes that there is no genuine issue of material fact that the use of [REDACTED] in an MMA adhesive was known to others outside of IPS prior to the SBI Patent.

60. In sum, the Court concludes that there is no genuine issue of material fact that the Components, save and except for [REDACTED], were not known to the

public or others outside IPS prior to Defendants' use and disclosure thereof. Accordingly, Osae breached the Consent Order by disclosing the Components, save and except for [REDACTED], in the SBI Patent. Plaintiffs' motion for summary judgment on the issue of Osae's liability for Plaintiffs' first breach of contract claim is granted. As to Plaintiffs' breach of contract claim against SBI, the Court concludes that genuine issues of material fact exist as to whether the claim is time barred and, as such, Plaintiffs' and SBI's motions for summary judgment on this claim are denied.

### 2. Plaintiffs' Second Count for Breach of Contract Against Osae.

61. Plaintiffs' second count for breach of contract against Osae is based on Osae's alleged use of the Components in the EBS Patent and its Acralock products covered thereby. The undisputed evidence shows that the EBS Patent does not disclose [REDACTED], (Petrie's Expert Report 17), and the Court has concluded that there is no genuine issue of material fact that [REDACTED] was generally known and thus does not constitute confidential information. As a result, in order to maintain their claim arising out of Osae's disclosure of Plaintiffs' confidential information in the EBS Patent, Plaintiffs must prove that the EBS Patent discloses the [REDACTED].

62. The undisputed evidence shows that the EBS Patent discloses [REDACTED]. (Petrie's Expert Report 17.) The Court cannot conclude, as a matter of law, that [REDACTED] is equivalent to Plaintiffs' confidential [REDACTED]. The evidence shows that, in or around 2007, DuPont announced that it was discontinuing certain A-type Neoprenes, including Neoprene AG and [REDACTED]. (Def. SBI's

Mot. Summ. J. Ex. 18, Interrog. 12, ECF No. 113; Briggs 2014 Dep. 88:5−6, 89:1−7.) At IPS, Osae conducted a number of experiments relating to the substitution of the W-type Neoprenes for the A-type Neoprenes that had been discontinued. (Def. SBI's Mot. Summ. J. Ex. 18, Interrog. 12.) Plaintiffs ultimately selected [REDACTED] to replace [REDACTED], and [REDACTED] to replace the [REDACTED]. (Def. SBI's Mot. Summ. J. Ex. 18, Interrog. 12.) Although the evidence tends to show that [REDACTED] and [REDACTED] the evidence tends to show that [REDACTED] has not been discontinued and is still on the market in addition to [REDACTED]. (Petrie's Expert Report 19; Petrie Dep. 45:24−46:1.)

63. Based on the foregoing, and viewing the evidence in the light most favorable to Osae as the non-movant, the Court cannot conclude as a matter of law that a disclosure of a [REDACTED] a disclosure of Plaintiffs' confidential [REDACTED]. Therefore, Plaintiffs' motion for summary judgment on their second count for breach of contract against Osae based on disclosure in the EBS Patent is denied.

### C. UDTPA Claim

64. In order to establish a UDTPA claim, Plaintiffs must prove (1) an unfair or deceptive act or practice, (2) in or affecting commerce, (3) which proximately caused injury to Plaintiffs. *Walker v. Fleetwood Homes of N.C., Inc.*, 362 N.C. 63, 71−72, 653 S.E.2d 393, 399 (2007).

65. Plaintiffs' UDTPA claim is based on their trade secrets claim. Plaintiffs argue that they are entitled to summary judgment on their UDTPA claim because they are entitled to summary judgment on their trade secrets claim, and "Defendants'

violations of the TSPA constitute unfair acts under" section 75-1.1.  (Br. Supp. IPS's Mot. Summ. J. 24.)  Defendants argue that they are entitled to summary judgment on Plaintiffs' UDTPA claim because Plaintiffs have failed to produce evidence of actual injury and because Defendants are entitled to summary judgment on Plaintiffs' trade secrets claim.  (Def. Osae's Mem. Supp. Mot. Summ. J. 16−17; Def. SBI's Mem. Supp. Mot. Summ. J. 22.)

66.    The Court has concluded that Defendants are entitled to summary judgment on Plaintiffs' trade secrets claim and, therefore, a violation of the TSPA cannot constitute the requisite unfair or deceptive act to support a UDTPA claim.  Plaintiffs' sole remaining claims are for breach of contract, and a mere breach of contract, even if intentional, is not sufficient to sustain a UDTPA claim.  *Mitchell v. Linville*, 148 N.C. App. 71, 74−75, 557 S.E.2d 620, 623 (2001).  Although a breach of contract may constitute an unfair or deceptive act if a party shows substantial aggravating circumstances attending the breach, *Griffith v. Glen Wood Co.*, 184 N.C. App. 206, 217, 646 S.E.2d 550, 558 (2007), Plaintiffs neither alleged nor argued that any substantial aggravating circumstances surrounded Defendants' breach.  Therefore, even assuming that section 75-1.1 applies, Defendants are entitled to summary judgment on Plaintiffs' UDTPA claim because Plaintiffs have failed to come forward with evidence of an unfair or deceptive act or practice.

### D.    **Punitive Damages**

67.    Pursuant to N.C. Gen. Stat. § 1D-15(a), punitive damages may be awarded only if Plaintiffs prove that Defendants are liable for compensatory damages and that

either fraud, malice, or willful or wanton conduct was present and related to the injury for which compensatory damages were awarded.

68. Plaintiffs argue that they are entitled to punitive damages based on both their trade secrets claim and their breach of contract claims. (Reply to Osae's Opp'n to IPS's Mot. Summ. J. 11; Resp. Opp'n Bader's Mot. Summ. J. 24−25.) As the Court has concluded that Defendants are entitled to summary judgment on Plaintiffs' trade secrets claim, the only remaining claims which may serve as a basis for punitive damages are Plaintiffs' breach of contract claims.

69. Punitive damages may not be awarded solely for breach of contract. N.C. Gen. Stat. § 1D-15(d). "Punitive damages are not allowed even when the breach is wilful [sic], malicious or oppressive." *Cash v. State Farm Mut. Auto. Ins. Co.*, 137 N.C. App. 192, 200, 528 S.E.2d 372, 377 (2000). "Nevertheless, where there is an identifiable tort even though the tort also constitutes, or accompanies, a breach of contract, the tort itself may give rise to a claim for punitive damages." *Newton v. Standard Fire Ins. Co.*, 291 N.C. 105, 111, 229 S.E.2d 297, 301 (1976). "Mere allegations of an identifiable tort are insufficient alone to support a claim for punitive damages. Furthermore, in order to sustain a claim for punitive damages, there must be an identifiable tort which is accompanied by or partakes of some element of aggravation." *Cash*, 137 N.C. App. at 200, 528 S.E.2d at 377 (quotation marks omitted).

70. Although Plaintiffs' trade secrets and UDTPA claims are based on the same conduct on which the breach of contract claims are based, the Court has concluded

that these claims must fail, and Plaintiffs have not introduced evidence of any other identifiable tort accompanying Defendants' breach of contract. Plaintiffs merely argue that Defendants' conduct constituted an intentional violation of the Consent Order. (Reply to Osae's Opp'n to IPS's Mot. Summ. J. 11.) This is insufficient as a matter of law to support an award of punitive damages. Therefore, Defendants' motions for summary judgment on Plaintiffs' request for punitive damages are granted.

## VI.    MOTIONS TO EXCLUDE

71.    Osae filed motions to exclude expert testimony of two of Plaintiffs' experts, Petrie and Paschall.[3]    As to Petrie, Osae moves to exclude Petrie's testimony regarding (1) Osae's ability to independently develop MMA structural adhesives; (2) Osae's alleged misappropriation of Plaintiffs' trade secrets at EBS; and (3) whether the Components are readily ascertainable through reverse engineering. (Def. Osae's Mot. to Exclude Expert Test. of Michael Petrie[4] 3, 6–7, ECF No. 101.) This testimony is relevant solely to Plaintiffs' misappropriation of trade secrets claim, and the Court has concluded that Defendants are entitled to judgment as a matter of law on such

---

[3] Osae filed two documents, each entitled a motion to exclude; however, Osae's two motions also contain Osae's arguments in support thereof and are unaccompanied by a separate brief, in violation of the General Rules of Practice and Procedure for the North Carolina Business Court ("BCR"). BCR 7.2 ("All motions must be made in electronic form and must be accompanied by a brief . . . . Each motion must be set out in a separate document."). Plaintiffs did not object to Osae's technical violation of the BCR and, as such, the Court, in its discretion, elects to proceed with its consideration of the motions to exclude.

[4] The motion incorrectly refers to Petrie as "Michael" Petrie, instead of "Edward."

claim.  Therefore, Osae's motion to exclude expert testimony of Petrie is denied as moot.

72.    As to Paschall, Osae moves under Rules 702 and 403 of the North Carolina Rules of Evidence to exclude Paschall's testimony that Plaintiffs are entitled to approximately $10.32 million in damages—EBS's alleged gross profits from its inception through February 2017—as a result of Osae's misappropriation of Plaintiffs' trade secrets at EBS.  (Def. Osae's Mot. to Exclude Expert Test. of Michael Paschall & Mot. Summ. J. 1–2, 13, ECF No. 102.)  Additionally, Osae argues that, upon exclusion of Paschall's testimony regarding damages, Osae is entitled to summary judgment because Plaintiffs cannot establish the damages element of their substantive claims.  (Def. Osae's Mot. to Exclude Expert Test. of Michael Paschall & Mot. Summ. J. 15.)

73.    As an initial matter, to the extent that Osae's motion to exclude also requests summary judgment on the ground that Plaintiffs cannot establish damages, the motion is improper.  Osae argued this ground at length as a basis for his motion for summary judgment, (Def. Osae's Mem. Supp. Mot. Summ. J. 13–15), and "although [t]here may be more than one motion for summary judgment in a lawsuit, . . . the second motion will be appropriate only if it presents legal issues that are different from those raised in the earlier motion[,]" *Cail v. Cerwin*, 185 N.C. App. 176, 181–82, 648 S.E.2d 510, 514 (2007) (alteration and omission in original) (quotation marks and emphasis omitted).

74.    Pursuant to N.C. Gen. Stat. § 66-154(b), a plaintiff who establishes misappropriation of trade secrets may recover the economic loss suffered by it or the unjust enrichment enjoyed by defendant as a result of the misappropriation, whichever is greater.  Here, Paschall's testimony regarding the amount of EBS's gross profits bears on Osae's unjust enrichment as a result of Osae's alleged misappropriation of trade secrets, as Plaintiffs contend that a nexus exists between Osae's unjust enrichment and EBS's gross profits. (Pls.' Resp. Opp'n Def. Osae's Mot. Exclude Expert Test. of Michael Paschall & Mot. Summ. J. 19–20, ECF No. 221.)  The Court has concluded that Defendants are entitled to summary judgment on Plaintiffs' misappropriation of trade secrets claim.  Plaintiffs' remaining claims are for breach of contract, to which Osae's alleged unjust enrichment is irrelevant.  "For a breach of contract the injured party is entitled as compensation therefore to be placed, insofar as this can be done by money, in the same position he would have occupied if the contract had been performed." *Moses H. Cone Mem'l Health Servs. Corp. v. Triplett*, 167 N.C. App. 267, 275, 605 S.E.2d 492, 497 (2004).  "The interest being protected by this general rule is the non-breaching party's 'expectation interest,' and in so doing, the injured party receives the 'benefit of the bargain.'" *First Union Nat'l Bank v. Naylor*, 102 N.C. App. 719, 725, 404 S.E.2d 161, 164 (1991).  "Additionally, nominal damages are allowed where a legal right has been invaded but there has been no substantial loss or injury to be compensated." *Lee Cycle Ctr., Inc. v. Wilson Cycle Ctr., Inc.*, 143 N.C. App. 1, 9–10, 545 S.E.2d 745, 750 (2001).  "*[Q]uantum meruit* is an appropriate measure of damages only for breach of an implied contract, and no

contract will be implied where an express contract covers the same subject matter." *APAC-Carolina, Inc. v. Greensboro-High Point Airport Auth.*, 110 N.C. App. 664, 675, 431 S.E.2d 508, 514 (1993).

75. In sum, Paschall's testimony regarding Osae's unjust enrichment is relevant only to Plaintiffs' trade secrets claim, which the Court has concluded must be dismissed. Any damages for Plaintiffs' remaining breach of contract claims may not be measured by Osae's unjust enrichment. Therefore, Osae's motion to exclude Paschall's testimony is denied as moot.

## VII. MOTIONS TO FILE UNDER SEAL

76. In connection with the parties' motions for summary judgment and Osae's motions to exclude, the parties filed numerous briefs and exhibits, most of which were filed under seal. In compliance with BCR 5.2, the parties filed multiple motions to file under seal. Thereafter, the parties filed public versions of some, but not all, of the documents that were filed under seal. During the hearing on the parties' motions for summary judgment and Osae's motions to exclude, the Court informed counsel that, based on its review of the sealed filings and comparison of those documents with the redacted versions made publicly available, the public versions of documents filed under seal were overly redacted and, accordingly, not in compliance with BCR 5.2. At the Court's request, the parties conferred and submitted to the Court a proposed schedule, which the Court adopted by order dated November 1, 2017, pursuant to which the parties were to re-file redacted versions of all documents filed under seal. In accordance with the Court's order, the parties re-filed redacted versions of sealed

documents on December 18 and 19, as well as two additional motions to file under seal. The Court now resolves all pending motions to file under seal.

77. The public has the right to inspect court records in civil proceedings. N.C. Gen. Stat. § 7A-109(a); *Virmani v. Presbyterian Health Servs. Corp.*, 350 N.C. 449, 463, 515 S.E.2d 675, 685 (1999). A court may shield portions of court records from the public under proper circumstances, however, this should only be done "when its use is required in the interest of the proper and fair administration of justice[.]" *Virmani*, 350 N.C. at 463, 515 S.E.2d at 685. Further, pursuant to N.C. Gen. Stat. § 66-156, "[i]n an action under [the TSPA], a court shall protect an alleged trade secret by reasonable steps which may include . . . sealing the records of the action subject to further court order[.]"

78. In essence, Plaintiffs contend that the redacted material constitutes Plaintiffs' trade secrets and confidential information, as well as information designated as "Confidential" or "Highly Confidential" under the protective order entered in this litigation. (Pls.' Rule 5.3 Suppl. Br. Supp. Def. SBI's Mot. to Seal & Def. Osae's Mot. to Seal 3–5, ECF No. 153.) On the one hand, the Court is troubled by the inherently inconsistent position taken by Plaintiffs that the Components have been publically disclosed in the patent literature but, at the same time, constitute trade secrets and confidential information. *See SCR-Tech LLC v. Evonik Energy Servs. LLC*, 2011 NCBC LEXIS 27, at *39 (N.C. Super. Ct. July 22, 2011) ("[I]t is well established that patent disclosure precludes trade secret protection for the information disclosed . . . ."); *Bondpro Corp. v. Siemens Power Generation, Inc.*, 463

F.3d 702, 706 (7th Cir. 2006) ("Publication in a patent destroys the trade secret . . . ."). On the other hand, the Court is mindful that, to the extent that any trade secret protection exists, such protection is lost upon publicly filing documents disclosing the alleged trade secrets. *See RoundPoint Mortg. Co.*, 2016 NCBC LEXIS 18, at *39 ("Information for which a claimant asserts trade secret protection can lose the benefit of protection if it has been disclosed, publicly released, or publicly filed during litigation."); *Glaxo Inc. v. Novopharm Ltd.*, 931 F. Supp. 1280, 1301 (E.D.N.C. 1996). Further, "it is possible for simultaneous patent and trade secret protection to subsist for related components of an article or steps in a process[.]" *SCR-Tech LLC*, 2011 NCBC LEXIS 27, at *39 (quotation marks omitted).

79. As the Court did not reach the issue of which information, if any, qualifies for trade secret protection, and having reviewed the redacted versions most recently filed, the Court concludes that the redacted information justifies sealed filing as confidential commercial information. The motions to file under seal are granted.

### VIII. CONCLUSION

80. For the foregoing reasons, the Court **ORDERS** as follows:

    A. The Court **GRANTS** Defendants' motions for summary judgment and **DENIES** Plaintiffs' motion for summary judgment on Plaintiffs' misappropriation of trade secrets claim, and such claim is dismissed with prejudice.

B.    The Court **DENIES** Plaintiffs' and Defendant SBI's motions for summary judgment on Plaintiffs' first count for breach of contract against SBI, and such claim shall go forward to trial.

C.    As to Plaintiffs' first count for breach of contract against Defendant Osae, the Court **GRANTS** Plaintiffs' motion for summary judgment on the issue of Defendant Osae's liability, and such claim shall go forward to trial on the issue of damages.

D.    The Court **DENIES** Plaintiffs' motion for summary judgment on Plaintiffs' second count for breach of contract against Defendant Osae, and such claim shall go forward to trial.

E.    The Court **GRANTS** Defendants' motions for summary judgment and **DENIES** Plaintiffs' motion for summary judgment on Plaintiffs' UDTPA claim, and such claim is dismissed with prejudice.

F.    The Court **GRANTS** Defendants' motions for summary judgment as to Plaintiffs' request for punitive damages.

G.    The Court **DENIES AS MOOT** Defendant Osae's motions to exclude expert testimony.

H.    The Court **GRANTS** the parties' motions to file under seal.

**SO ORDERED**, this the 30th day of January, 2018.

/s/ Michael L. Robinson
_____
Michael L. Robinson
Special Superior Court Judge
  for Complex Business Cases